BERGER v BERGER

Docket No. 279025. Submitted January 15, 2008, at Lansing. Decided
     January 31, 2008, at 9:00 a.m.
     Kristen Berger brought a divorce action against Derek T. Berger in
        the Jackson Circuit Court. The court, John G. McBain, J., awarded
        the plaintiff custody of the parties' children, adjusted the defen-
        dant's parenting-time schedule, and awarded the plaintiff 70
        percent of the marital estate. The defendant appealed.
        The Court of Appeals *held*:
        1. The trial court did not clearly err by finding that the
     plaintiff met the 10-day county residency requirement for filing
     her complaint. Once the plaintiff had established Jackson County
     as her intended place of residence, her temporary absence from the
     county did not affect her residency there.
        2. The trial court did not err by finding that a custodial
     environment existed with the plaintiff but not with the defendant.
     The fact that the plaintiff was busy outside the home does not
     preclude a finding that the children looked to her for guidance,
     discipline, the necessities of life, and parental comfort, and the
     trial court's conclusion that the plaintiff's witnesses were more
     credible is entitled to deference. The trial court's ruling on this
     issue was not inconsistent with its findings that the factors
     relating to maintaining continuity and the permanence of the
     proposed custodial home slightly favored the defendant.
        3. The defendant makes no convincing argument that the trial
     court's findings regarding the statutory best-interest factors were
     against the great weight of the evidence. Although the defendant
     earned more money than the plaintiff at the time of trial, evidence
     indicated that he experienced long periods between jobs, and that
     the plaintiff, as a registered nurse, was well equipped to provide for
     the children's needs. The trial court did not fail to consider
     evidence that the plaintiff allegedly had extramarital affairs and
     was frequently away from home; rather, the trial court concluded
     that the plaintiff remained the children's primary caregiver de-
     spite her absences and that the plaintiff's alleged affairs had less
     connection to the children's best interests than defendant's affair
     in the marital home with his wife's cousin, who was also the

children's nanny. Because the trial court's reasoning was rationally related to the testimony it found credible, the defendant has not overcome the deference due the trial court's superior fact-finding ability and its determinations regarding the relative weight to be assigned to the testimony.

4. The trial court's finding that allowing the defendant to have mid-week parenting time was disruptive to the children was not against the great weight of the evidence, and its modification of the parenting-time order accordingly fostered the best interests of the children.

5. The trial court abused its discretion by awarding 70 percent of the marital estate to the plaintiff. Although the trial court did not clearly err in determining that the defendant's affair caused the marital breakdown or in refusing to value and divide the plaintiff's college degrees as marital assets, the trial court gave disproportionate weight to the defendant's affair when apportioning the property. On remand, the trial court must achieve a division of property that is fair and equitable.

6. The trial court abused its discretion by placing nearly the entire financial burden of supporting the children on the defendant and by failing to impute income to the plaintiff in an amount more truly representative of her earning capacity, particularly because it was the plaintiff's decision to seek a divorce and custody of the children.

7. The trial court's award of spousal support was just and reasonable because it was limited to one year and aimed at assisting the plaintiff's transition to becoming a full-time working mother.

Affirmed in part, reversed in part, and remanded for further proceedings.

DOMICILE — DIVORCE — JURISDICTION — INTENT.

A person who has established that he or she intends to reside in a county need not remain in that county continuously to meet the 10-day statutory residency requirement for filing a divorce action (MCL 552.9[1]).

*Kathleen Rezmierski, Attorney at Law, P.L.L.C.* (by *Kathleen Rezmierski*), for the plaintiff.

*Judith A. Curtis* for the defendant.

Before: FITZGERALD, P.J., and MARKEY and SMOLENSKI, JJ.

PER CURIAM. Defendant appeals by right a judgment of divorce entered after a six-day trial. We affirm in part, reverse in part, and remand for further proceedings.

I

Defendant first argues that the trial court clearly erred by finding that plaintiff satisfied the 10-day jurisdictional residency requirement of MCL 552.9(1).[1] We disagree.

A claim that the trial court lacked jurisdiction is a question of law that this Court reviews de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). But whether a party has satisfied the requirement of MCL 552.9(1) and "has resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint" presents a question of fact. See *Smith v Smith*, 218 Mich App 727, 730-731; 555 NW2d 271 (1996); *Leader v Leader*, 73 Mich App 276, 281, 283; 251 NW2d 288 (1977). This Court reviews for clear error the factual findings underlying the trial court's rulings. MCR 2.613(C); *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if, on all the evidence, the Court is left with the definite and firm conviction that a mistake has been made. *Id.*

The trial court determined that plaintiff established residency in Jackson County on December 16, 2006.

---

[1] This Court denied defendant's application for leave to appeal the jurisdictional decision before trial. *Berger v Berger*, unpublished order of the Court of Appeals, entered March 22, 2006 (Docket No. 268267).

Although defendant points to some testimony by plaintiff that would support a contrary finding if viewed in isolation, we defer to the trial court's superior fact-finding ability, MCR 2.613(C), and are not left with a definite and firm conviction that a mistake was made when viewed in light of the whole record. *Beason, supra* at 805. Therefore, we cannot conclude that the trial court clearly erred in finding that plaintiff satisfied the 10-day residency requirement of MCL 552.9(1).

We do not agree with defendant's argument that MCL 552.9(1) requires plaintiff's continuing physical presence in Jackson County for the 10 days immediately preceding filing for divorce. The statute's plain language requires only that plaintiff had established her residence for the "10 days immediately preceding the filing of the complaint." Once plaintiff established and intended Jackson County as her residence on December 16, 2005, her temporary absence did not change it.

This Court in *Leader, supra*, held that the plaintiff satisfied the similar 180-day state residency requirement of MCL 552.9(1) even though the plaintiff lived in Kentucky for four months during the 180 days immediately preceding her filing for divorce in Michigan. The *Leader* Court determined on the basis of the plaintiff's intent that her residence remained Michigan. *Leader, supra* at 280. The Court's discussion of the statutory residency requirement is instructive in the present case.

The *Leader* Court observed that "residence" is "a place of abode accompanied with the intention to remain." *Id*. Further, the Court noted that in Michigan, domicile and residence are synonymous terms. *Id*. The Court also noted that because of modern society's mobility, for the purpose of determining residency,

"physical presence for a longer period of time is no longer the key factor it once was." *Id.* at 281. The Court opined: "For many purposes, residence must be considered in light of a person's intent. Presence, abode, property ownership and other facts are often considered, yet intent is the key factor. This has been recognized in most jurisdictions and repeatedly cited." *Id.* (internal citation omitted).

The *Leader* case establishes two important principles applicable to the case at bar. First, determining residence or domicile requires a multi-factor analysis, but the preeminent factor is the person's intent. Second, an established domicile is not destroyed by a temporary absence if the person has no intention of changing his or her domicile. The trial court properly applied the first principle in finding that plaintiff established Jackson County as her residence on December 16, 2005. The court applied the second principle in finding that plaintiff "resided in the county in which the complaint is filed for 10 days immediately preceding the filing of the complaint" even if plaintiff slept one night in her Ann Arbor apartment during that 10-day period. The critical factor regarding this issue is whether the trial court clearly erred in finding that plaintiff established Jackson County as her residence by December 16, 2005. Our review of all the evidence at the jurisdictional hearing, with deference to the trial court's superior fact-finding ability, does not leave us with a definite and firm conviction that the trial court mistakenly found that plaintiff satisfied the 10-day jurisdictional requirement of MCL 552.9(1). *Beason, supra* at 805.

II

Defendant next argues that the trial court erred by finding that a custodial environment for the parties'

children existed with plaintiff but not defendant. Defendant also argues that the trial court's findings regarding several of the statutory factors used to determine the best interests of the children were against the great weight of the evidence. We disagree.

The Child Custody Act, MCL 722.21 *et seq.*, governs child custody disputes. The act is intended to promote the best interests of children, and it is to be liberally construed. MCL 722.26(1); *Mason v Simmons*, 267 Mich App 188, 194; 704 NW2d 104 (2005).

This Court must affirm all custody orders unless the trial court's findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877 (BRICKLEY, J.), 900 (GRIFFIN, J.); 526 NW2d 889 (1994). Thus, a trial court's findings regarding the existence of an established custodial environment and with respect to each factor regarding the best interest of a child under MCL 722.23 should be affirmed unless the evidence clearly preponderates in the opposite direction. *Fletcher, supra* at 879; *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). This Court will defer to the trial court's credibility determinations, and the trial court has discretion to accord differing weight to the best-interest factors. *Sinicropi v Mazurek*, 273 Mich App 149, 155, 184; 729 NW2d 256 (2006). The trial court's discretionary rulings, such as to whom to award custody, are reviewed for an abuse of discretion. *Fletcher, supra* at 879. An abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Id.* at 879-880, citing *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). This standard

continues to apply to a trial court's custody decision, which is entitled to the utmost level of deference. *Shulick v Richards*, 273 Mich App 320, 325; 729 NW2d 533 (2006). This Court reviews questions of law for clear legal error that occurs when a trial court incorrectly chooses, interprets, or applies the law. *Fletcher, supra* at 881; *Phillips, supra* at 20.

A

Whether an established custodial environment exists is a question of fact that we must affirm unless the trial court's finding is against the great weight of the evidence. MCL 722.28; *Mogle v Scriver*, 241 Mich App 192, 196-197; 614 NW2d 696 (2000). A finding is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Sinicropi, supra* at 155.

MCL 722.27(1)(c) provides that a custodial environment is established if

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence. *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981). The existence of a temporary custody order does not preclude a finding that an established custodial envi-

ronment exists with the noncustodian or that an established custodial environment does not exist with the custodian. *Id.* at 579; *Moser v Moser*, 184 Mich App 111, 114-116; 457 NW2d 70 (1990). A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order. *Hayes v Hayes*, 209 Mich App 385, 388; 532 NW2d 190 (1995). An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort. *Foskett v Foskett*, 247 Mich App 1, 8; 634 NW2d 363 (2001).

The gist of defendant's argument is that because plaintiff was so busy outside the home, she could not have established a custodial environment with the children superior to that of defendant. At best, defendant argues, the evidence established that each parent had an established custodial environment with the children. Plaintiff argues that despite being very busy, she was still the children's primary caregiver. Because the trial court found the witnesses favoring plaintiff's argument more credible and gave greater weight to their testimony, it cannot be said that the evidence clearly preponderates in the opposite direction. "In reviewing the findings, this Court defers to the trial court's determination of credibility." *Sinicropi, supra* at 155, citing *Mogle, supra* at 201; see also MCR 2.613(C). Likewise, the "against the great weight of evidence" standard of MCL 722.28 accords deference to the superior fact-finding ability of the trial court; an appellate court may not substitute its judgment for that of the trial court on questions of fact unless the evidence " 'clearly preponderate[s] in the opposite direction.' " *Fletcher, supra* at 878-879, quoting *Murchie v Standard Oil Co*, 355 Mich 550, 558; 94 NW2d 799 (1959).

Defendant attacks the trial court's findings on the basis that plaintiff's primary corroborating witnesses were biased relatives: her cousin Jennifer Johnson[2] and her mother, Margaret Teske. Defendant points to the testimony of witnesses he produced who testified that defendant was the parent they primarily observed with the children. This argument fails because the trial court is in the best position to determine the credibility of witnesses. MCR 2.613(C); *Sinicropi, supra* at 155. The trial court considered the testimony of defendant's witnesses but obviously found them lacking credibility, gave their testimony little weight, or simply found plaintiff's and Johnson's testimony more credible.

Defendant also argues that the trial court's finding that an established custodial environment existed with plaintiff and not defendant was inconsistent with the court's findings that best-interest factors d and e favored defendant. Best-interest factor d considers how long the children have lived in a stable, satisfactory environment, and the desirability of maintaining continuity; the court only slightly favored defendant. Best-interest factor e addresses the permanence as a family unit of the existing or proposed custodial home or homes. Again, the court slightly favored defendant. In sum, defendant's argument fails because the trial court's findings regarding best-interest factors d and e were not inconsistent with its overall findings under MCL 722.27(1)(c) that over an appreciable time the children naturally looked to plaintiff for guidance, discipline, the necessities of life, and parental comfort.

The court found best-interest factor d slightly favored defendant not because the children looked to defendant for "guidance, discipline, the necessities of

---

[2] Johnson served as a live-in nanny in the Berger household from 1999 to 2000, and again for about four months in 2004.

life, and parental comfort," but because of the marital
home and its surrounding environment. The court
found that the marital home was "in a neighborhood
and in a community that provides an excellent environ-
ment for the children and an excellent environment for
the children to play and interact with other children."
Further, "the children had many friends around their
home and at school," and moving to a new home and
school was "somewhat disruptive to the children."
Nevertheless, the court found that this factor only
slightly favored defendant because the children
"seemed to be working through the anxiety and disrup-
tion associated with their move out of the marital home
to Jackson County" and because the children "have met
new friends in Jackson and appear to be adjusting well
to their new school and community." Hence, it was
because of the environment surrounding the marital
home, its neighborhood, and the children's school that
the trial court determined this factor slightly favored
defendant. The court did not do so because the children
looked to defendant for guidance, discipline, the neces-
sities of life, and parental comfort.

Similarly, the trial court's finding that best-interest
factor e slightly favored defendant is consistent with the
court's finding that the children looked to plaintiff for
"guidance, discipline, the necessities of life, and parental
comfort." Factor e addresses the permanence as a family
unit of the existing or proposed custodial home or homes.
The court found that defendant's keeping the marital
home "will support the near-term emotional needs of the
children." Further, "[t]he marital home continues to be an
important stabilizing factor for the children." Neverthe-
less, because the court found that "the children appear to
be transitioning effectively to a new home, school and
community in Jackson," it also found that this factor only
slightly favored defendant.

The court's finding is simply not inconsistent with its also finding that the children looked to plaintiff for "guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

In sum, on the basis of the trial court's credibility determinations, the evidence does not clearly preponderate against the court's finding that an established custodial environment existed with plaintiff, not defendant. *Fletcher, supra* at 879; *Sinicropi, supra* at 155. Therefore the trial court's finding is not against the great weight of the evidence and must be affirmed. MCL 722.28; *Fletcher, supra* at 879. It follows that defendant had the burden of proving by clear and convincing evidence that a change of custody would be in the children's best interests. MCL 722.27(1)(c); *Mason, supra* at 195.

B

Defendant next argues that the trial court's findings regarding the best interests of the children, MCL 722.23(c), (d), (e), (f), (g), (j), and (k), were against the great weight of the evidence.

Our review of the record convinces us that defendant's arguments regarding the trial court's findings with respect to the statutory best-interest factors are without merit. First, as discussed, the trial court's determination that an established custodial environment existed with plaintiff, but not defendant, placed the burden of proof on defendant to establish by clear and convincing evidence that a change of custody would be in the children's best interests. MCL 722.27(1)(c); *Mason, supra* at 195. Second, defendant has advanced no convincing argument that the trial court's findings on the various best-interest factors were against the great weight of the evidence. Defendant primarily at-

tacks the trial court's credibility determinations and the weight it assigned to the various best-interest factors. Defendant's arguments do not overcome the deference due the trial court in making such determinations. MCR 2.613(C); *Sinicropi, supra* at 155, 184; *McCain v McCain,* 229 Mich App 123, 130-131; 580 NW2d 485 (1998). Thus, defendant has not established that the trial court abused its discretion in awarding plaintiff custody of the children. *Sinicropi, supra* at 155; *Shulick, supra* at 322-325 (a trial court's custody decision "is entitled to the utmost level of deference").

The trial court found that factor c slightly favored plaintiff. The trial court recognized that defendant had the capacity to earn more money than plaintiff but also that he had experienced fairly long fallow periods when between jobs. On the other hand, while plaintiff had a lesser earning capacity, it was adequate to meet the children's material needs. Moreover, demand for plaintiff's profession (nursing) is such that she could easily work and earn more yet still maintain the flexibility she needs to care for the children. She could also supplement her earnings by teaching dance part-time. Thus, it was not against the great weight of the evidence for the trial court to balance these factors to conclude that "both parties have the financial ability to provide the children with food, clothing and medical care." Likewise, the court's finding that this factor slightly favored plaintiff is supported by evidence that, as a registered nurse, she could personally attend to some of the children's health-care needs and also that plaintiff was the parent who more often took the children to the doctor and dentist and administered prescription medications.

Moreover, defendant's argument is based on his own testimony, which the court found less credible than

contrary testimony. Further, defendant's argument also hinges on the fact that at the time of trial, he earned more money than plaintiff. Factor c does not contemplate which party earns more money; it is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs. Thus, this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income. The trial court's finding on factor c was not against the great weight of the evidence. MCL 722.28.

Defendant advances no meaningful argument that the trial court erred regarding factors d and e. Defendant only incorporates his argument regarding these factors with respect to the existence of an established custodial environment. As already discussed, defendant's argument is without merit. A party abandons a claim when it fails to make a meaningful argument in support of its position. *Eldred v Ziny*, 246 Mich App 142, 154; 631 NW2d 748 (2001). Moreover, because the trial court need not make its custody determination on the basis of a mathematical calculation and may assign differing weights to the various best-interest factors, *Sinicropi, supra* at 184, defendant cannot establish any error in assigning weight to these two factors that was outcome-determinative.

The trial court found that factor f strongly favored plaintiff. We conclude that the trial court's findings regarding factor f were not against the great weight of the evidence.

Our Supreme Court has held with respect to extramarital affairs that a spouse's "questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Fletcher, supra* at 887. Examples

of such conduct include, but are not limited to, "verbal abuse, drinking problems, driving record, physical or sexual abuse of children, and other illegal or offensive behaviors." *Id.* at 887 n 6. Trial courts must "look to the parent-child relationship and the effect that the conduct at issue will have on that relationship." *Id.* at 887. Thus, under factor f, the issue is not who is the morally superior adult, but rather "the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Id.*

Here, the trial court recognized the *Fletcher* Court's conclusion that an extramarital affair may not be a reliable indicator of the party's parenting ability. The trial court instead used the defendant's affair with plaintiff's cousin, who was the children's nanny, as evidence of character flaws that do reflect directly on defendant's parenting ability. Specifically, defendant chose self-gratification over the children's interests and lacked insight and judgment regarding the potential effect of his actions on others, including the children. The trial court also found that defendant lacked candor based on other evidence.

Defendant correctly notes that he never spoke to social worker Dot Tetreault; therefore, the trial court erred when it concluded he was not candid with her. This error is harmless, however, because elsewhere in the trial court's analysis of factor k, it noted that Tetreault interviewed only plaintiff and the two children. Furthermore, the court's finding regarding lack of candor was supported by evidence that defendant initiated divorce proceedings in Macomb County after being served with Jackson County divorce pleadings.

The testimony of Jennifer Johnson, which the trial court found credible, fully supported the trial court's findings regarding defendant's affair. While defendant

viewed the affair as an old one-night stand, Johnson testified about several incidents of intimate touching over a period of a year and a half culminating on some occasions in intercourse or oral sex. These incidents occurred in the marital home while Johnson was employed as a nanny from 1999 to 2000. While these intimate liaisons were occurring, neither could devote full attention to child care. Johnson also testified that when she returned to the Berger household in 2004, defendant's comments and touching again became "too friendly," making her feel uncomfortable. The court found "the unique nature of this extra-marital affair" —i.e., seducing the children's nanny, plaintiff's cousin, in the marital home—demonstrated extraordinarily poor judgment and lack of insight about the effect his conduct could have on everyone in the household, including ultimately the children.

Defendant argues that the trial court failed to adequately consider evidence that plaintiff engaged in extra-marital relations and was frequently away from home. But *Fletcher* teaches that evidence of an affair is not relevant to factor f unless it is relevant to the relative fitness of a party to provide for the child. *Fletcher, supra* at 887. A logical link does not exist with plaintiff's alleged affairs. Also, evidence supported the trial court's finding that, despite her busy schedule, plaintiff remained the primary parent providing child care.

Defendant's claim that the trial court's fact-finding demonstrated judicial bias has no merit. The record simply does not reflect that the trial court harbored deep-seated favoritism or antagonism against him that would have made fair judgment impossible. *Eldred, supra at* 152.

Finally, defendant offers no legal support for his argument that plaintiff's decision to seek a divorce,

with its inevitable disruptive effect on the children, is the type of "questionable conduct" that is relevant to factor f as bearing on a party's parental ability. "[W]here a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

The trial court found that factors g, j, and k, favored plaintiff. We conclude that the trial court's findings were not against the great weight of the evidence. MCL 722.28. Defendant's arguments to the contrary are based on attacking the trial court's credibility determinations, the inferences to be drawn from the testimony, and the weight to assign to various witnesses' testimony. Because the trial court's reasoning is rationally related to the testimony it found credible and to reasonable inferences drawn from the testimony, defendant fails to overcome the deference due the trial court's superior fact-finding ability and its determination regarding the relative weight to assign testimony as appropriate under the circumstances. MCR 2.613(C); *Sinicropi, supra* at 155, 184.

In summary, the trial court's determination that an established custodial environment existed with plaintiff and its findings regarding the best-interest factors under MCL 722.23 were not against the great weight of the evidence, nor did the trial court commit clear legal error on a major issue. MCL 722.28. Further, the court's ultimate discretionary custody decision was not a palpable abuse of discretion. *Shulick, supra* at 325.

C

Defendant also argues that the trial court abused its discretion by adjusting the parenting-time schedule, eliminating defendant's mid-week parenting time. We disagree.

Like other child custody disputes, parenting-time orders are governed by the Child Custody Act. Specifically, MCL 722.27a(1) requires that parenting time "shall be granted in accordance with the best interests of the child."

Although appellate review of parenting-time orders is de novo, this Court must affirm the trial court unless its findings of fact were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28; *Borowsky v Borowsky*, 273 Mich App 666, 688; 733 NW2d 71 (2007).

We conclude that both parties erroneously focus on the sheer quantity of parenting time awarded to defendant. Rather, the best interests of the children govern this and all other custody issues. MCL 722.27a(1); *Borowsky, supra*; *Mason, supra* at 194. Here, the trial court determined that mid-week parenting time was disruptive to the children, so it substituted other parenting time. The court's finding was not against the great weight of the evidence, nor did the court commit clear legal error. Rather, the trial court's ruling fostered the best interests of the children. The court's modification of its earlier parenting-time schedule is not a basis for finding a palpable abuse of discretion; therefore, this Court must affirm the trial court's order. MCL 722.28; *Borowsky, supra* at 688.

III

Defendant next argues that the trial court abused its discretion by inequitably dividing the marital property and awarding plaintiff 70 percent and defendant 30 percent. We agree.

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of

property in light of all the circumstances. *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained. *Id.*; *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). Trial courts may consider the following factors in dividing the marital estate: (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. *Gates, supra* at 424, citing *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992). See, also, *McDougal v McDougal*, 451 Mich 80, 88-89; 545 NW2d 357 (1996), and *Sands v Sands*, 442 Mich 30, 34-36; 497 NW2d 493 (1993). When dividing marital property, a trial court may also consider additional factors that are relevant to a particular case. *Sparks, supra* at 160. The trial court must consider all relevant factors but "not assign disproportionate weight to any one circumstance." *Id.* at 158.

On appeal, this Court must first review the trial court's findings of fact for clear error. *Id.* at 151; *McNamara, supra* at 182. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. *McNamara, supra* at 182-183; *Beason, supra* at 805. The trial court's factual findings are accorded substantial deference. MCR 2.613(C); *Sparks, supra* at 147. If the trial court's findings of fact are upheld, this Court must decide whether the trial court's dispositional ruling was fair and equitable in light of those facts. This Court will affirm the lower court's

discretionary ruling unless it is left with the firm conviction that the division was inequitable. *Sparks, supra* at 151-152; *Gates, supra* at 423.

First, we find no merit in defendant's argument that the trial court clearly erred by finding that defendant's affair with Johnson was the sole cause of the marriage breakdown. As already discussed, the trial court found plaintiff's and Johnson's testimony about the affair and its effects more credible than defendant's. This Court defers to a trial court's findings of fact stemming from credibility determinations. *Sparks, supra* at 147, citing *Beason, supra* at 799. Here, the trial court's finding is not clearly erroneous.

Second, defendant's argument that plaintiff's bachelor's and master of fine arts degrees in dance should have been valued and divided as a marital asset also lacks merit. Defendant cites *Postema v Postema*, 189 Mich App 89; 471 NW2d 912 (1991), for the proposition that it is settled law that an advanced degree may be a valuable marital asset. The *Postema* Court noted that in certain situations panels of this Court had held that "*fairness* dictates that a spouse who did not earn an advanced degree be compensated whenever the advanced degree is the end product of a *concerted family effort* involving mutual sacrifice and effort by both spouses." *Postema, supra* at 94. The Court concluded that where "an advanced degree is the end product of a concerted family effort, involving the mutual sacrifice, effort, and contribution of both spouses, there arises a 'marital asset' subject to distribution, wherein the interest of the nonstudent spouse consists of an 'equitable claim' regarding the degree." *Id.* at 101. But the *Postema* Court specifically rejected the approach defendant advocates here of using expert testimony to establish a present value for an educational degree that one

spouse obtained during the marriage and dividing it like any other marital asset. *Id.* at 102-103.

Consequently, the trial court did not err in rejecting proposed expert testimony regarding the alleged present value of plaintiff's educational attainments during the marriage. Further, considering the testimony the trial court found credible, defendant did not establish an equitable claim for contributions to plaintiff's education. Rather, plaintiff pursued her dancing education to fulfill her dreams but simultaneously maintained her role as primary caregiver to the children and secondary financial supporter of the family. At best, defendant tolerated plaintiff's educational pursuits; he did not sacrifice his own business or employment opportunities to support plaintiff's education.

Although the trial court did not clearly err in its findings of fact, giving due deference to its superior fact-finding ability, MCR 2.613(C), the trial court's dispositional ruling is not entitled to the same deference on appeal.

> The judge's exercise of discretion in fashioning a property division is not entirely based on the demeanor of witnesses or issues of credibility; accordingly, the reasons for great appellate deference are simply inapplicable. The trial court is not in a position superior to the appellate court in this area of applying conscience and reason, and it is the duty of the appellate court to reach an independent conclusion. [*Sparks, supra* at 148.]

Here, the trial court supported its dispositional ruling by finding that the parties' marriage lasted 10 years; each party enjoyed good physical and relatively sound mental health; both parties have the ability for meaningful employment; at the time of the divorce, defendant earned substantially more a year than plaintiff ($120,000 versus $22,000); both parties contributed

to the acquisition of the marital estate; defendant was the family's primary financial supporter while plaintiff worked part-time and was the children's primary childcare provider; and plaintiff also supported the family financially when defendant became unemployed, which permitted purchasing the marital home. These factors taken together, except perhaps the disparity of income, indicate that a more equal division of marital property would be fair and equitable.

The disparity of income the trial court cited may accurately reflect the parties' earnings in the year preceding the divorce trial, but it is a misleading reflection of the parties' present and future earning capacities. Plaintiff testified that she could earn $50,000 a year as a nurse or an equal amount as an assistant college professor of dance. Indeed, when it found in favor of plaintiff under child custody best interest factor c, the trial court determined that both parties had the financial ability to support the children. Thus, the disparity between the parties' incomes and the other factors cited above do not support the trial court's significantly incongruent dispositional ruling.

The trial court also justified its dispositional ruling by giving "special consideration" to *Sparks* factors 5, the life status of the parties; 6, the necessities and circumstances of the parties; 7, the earning abilities of the parties; and 8, the past relations and conduct of the parties. But factors 5, 6, and 7 are already considered in those previously discussed, and they do not justify such an unequal division of the marital estate. The trial court's reasoning to the contrary is unpersuasive. The court noted that plaintiff was awarded custody of the parties' two children and that there was "a huge disparity in the current income earning" of the parties. But custody of the children was hotly contested, and the

trial court awarded custody to plaintiff at least in part on the equal abilities of the parties to financially support the children. It is hardly fair and equitable for the trial court to take a contrary position to justify a determination that the custodial party should receive an excessive award of the marital property. Moreover, as defendant correctly argues, any disparity of income between the custodial parent and noncustodial parent will be accounted for under the Michigan's Child Support Formula (MCSF). We therefore conclude that none of the factors discussed up this point supports the trial court's significantly diverging from a more equal division in its dispositional ruling dividing the marital property.

The last factor the trial court used to justify its dispositional ruling on property division was defendant's affair with Jennifer Johnson. We conclude for two reasons that the trial court erred in deviating from a congruent division of the marital property to the extent it did. First, while *Sparks* and its progeny authorize a trial court to consider a party's fault in causing the breakdown of the marital relationship as a factor that may be considered in dividing the marital estate, "the trial court must consider all the relevant factors and not assign disproportionate weight to any one circumstance." *Sparks, supra* at 158. In dividing a marital estate, no mathematical formula exists. Moreover, the court need not give equal weight to each factor it considers relevant in dividing the marital estate. *Id.* at 158-159. Just as in *Sparks*, where the plaintiff's sexual infidelity did not justify a 75/25 division of marital property, we conclude that here, because fault is the only true justification for the huge divergence from congruence, the trial court assigned this one factor disproportionate weight.

Additionally, the tenor of the trial court's comments suggests its property division was intended to punish defendant for his affair with Johnson, which the court found particularly egregious. In dividing the marital estate, "a judge's role is to achieve equity, not to 'punish' one of the parties." *Sands, supra* at 36-37. Here, the record indicates the trial court was more intent on imposing punishment than in equitably apportioning the marital property. For these reasons, this Court is left with the firm conviction that the trial court's dispositional ruling dividing the marital property, with plaintiff receiving 70 percent and defendant receiving 30 percent, was inequitable. Consequently, we remand to the trial court for the purpose of achieving a division of property that is fair and equitable.

IV

Defendant also argues that the trial court abused its discretion in failing to impute to plaintiff earnings more reflective of her true earning capability for the purpose of calculating defendant's child-support obligation and in awarding spousal support. We agree with respect to child support but not spousal support.

This Court recently stated the standard of review with respect to setting child support in *Stallworth v Stallworth*, 275 Mich App 282; 738 NW2d 264 (2007):

> The Michigan Legislature has required that when a court orders child support as part of a divorce judgment, "the court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau" unless to do so would be "unjust or inappropriate" and the trial court makes certain specified findings "in writing or on the record . . . ." MCL 552.605(2); *Peterson v Peterson*, 272 Mich App 511, 516-517; 727 NW2d 393 (2006). Thus, a trial court must presumptively follow the Michigan Child Sup-

port Formula (MCSF). If the court deviates, it must make an adequate record regarding the mandatory statutory criteria for doing so. *Burba v Burba (After Remand),* 461 Mich 637, 644-646; 610 NW2d 873 (2000). We review de novo whether a trial court properly reached its determination within the framework of the MCSF or the statutory deviation criteria. *Id.* at 647; *Peterson, supra* at 516. We review for clear error, however, the trial court's factual findings underlying its determination of a child-support award. MCR 2.613(C); *Beason v Beason,* 435 Mich 791, 804-805; 460 NW2d 207 (1990). A finding is clearly erroneous if this Court, on all the evidence, is left with a definite and firm conviction that a mistake was made; the appellant bears the burden of showing that a mistake was made. *Id.* We review for an abuse of discretion a trial court's discretionary rulings that are permitted by statute or the MCSF. *Borowsky v Borowsky,* 273 Mich App 666, 672; 733 NW2d 71 (2007). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Id.,* citing *Maldonado v Ford Motor Co,* 476 Mich 372, 388; 719 NW2d 809 (2006). [*Stallworth, supra* at 283-284.]

With respect to child support, the trial court determined that plaintiff had the ability to earn $50,000 a year either as a nurse or as a nurse and dance instructor. Yet the trial court only used plaintiff's lesser part-time employment income to calculate defendant's child-support obligation. We conclude that the trial court's decision to not impute income more relevant to plaintiff's earning ability was outside the range of reasonable and principled outcomes and, therefore, an abuse of discretion. *Stallworth, supra* at 284. The trial court's decision provides total support for plaintiff's decision to work for just a few hours a week and thereby earn a small fraction of the income she is capable of generating. Although it is within the trial court's discretion to consider the children's ages and care needs when considering this issue, this Court still concludes that it is

unreasonable and unprincipled to place nearly 100 percent of the financial responsibility for the children on defendant under these circumstances. Plaintiff elected to divorce, and she chose to seek custody of the children, i.e., she sought to become a single parent. Moreover, she has a great deal of education and is more than capable of helping to financially support her children. She should not be treated so differently from defendant simply because she wishes at this point to be essentially a stay-at-home mother. There is also, perhaps, some irony in the trial court's decision as it is evident that before the divorce and when the children were much younger, plaintiff was frequently gone. In fact, she maintained an apartment in Ann Arbor while pursuing her graduate degree. Also, plaintiff's cousin served for a lengthy period as their nanny, apparently because both parties had so little time for child care. Now, although plaintiff has completed her education and is highly employable, she wants to spend most of her time at home. But the fact is, she has a joint and several obligation to financially support her children. MCL 722.3(1); *Borowsky, supra* at 672-673. Indeed, as discussed, one factor the trial court weighed in plaintiff's favor in awarding plaintiff custody of the children was her ability to earn an annual income of at least $50,000 and financially support the children. Under these facts, the trial court's decision unfairly allows plaintiff "to have her cake and eat it too."

In calculating the contributions to support that divorced parents must make, the trial court must generally follow the MCSF as developed by the Friend of the Court unless to do so would be "unjust or inappropriate" and the trial court makes findings "in writing or on the record" supporting a deviation as required by statute. MCL 552.605(2); *Stallworth, supra* at 283-284. Here, the record does not indicate that the trial court

believed it was deviating from the MCSF by not imput-
ing income to plaintiff and correctly noted that the final
determination regarding the appropriateness of imput-
ing income in an individual case is a judicial one. As this
Court observed in *Stallworth, supra* at 285:

> [T]he MCSF grants a court the discretion to impute
> income to a parent, 2004 MCSF 2.10(B), which the manual
> defines as "treating a party as having income or resources
> that the individual does not actually have." 2004 MCSF
> 2.10(A). "This usually occurs in cases where there is a
> voluntarily [sic] reduction of income or a voluntary unex-
> ercised ability to earn." *Id.*

Nevertheless, the MCSF provides guidance to trial
courts to determine whether to impute income to a
party. See *Ghidotti v Barber*, 459 Mich 189, 199; 586
NW2d 883 (1998).

> When determining what income, if any [to impute],
> consider among other equitable factors the following crite-
> ria:
>
> (1) Prior employment experience;
>
> (2) Education level;
>
> (3) Physical and mental disabilities;
>
> (4) The presence of parties' children in the individual's
> home and its impact on the earnings;
>
> (5) Availability of employment in the local geographical
> area;
>
> (6) The prevailing wage rates in the local geographical
> area;
>
> (7) Special skills and training; or
>
> (8) Whether there is any evidence that the individual in
> question is able to earn the imputed income. [2004 MCSF
> 2.10(E).]

These factors generally ensure that adequate fact-
finding supports the conclusion that the parent to

whom income is imputed has an actual ability and likelihood of earning the imputed income. *Ghidotti, supra* at 199; *Stallworth, supra* at 285. Here, however, it is undisputed that plaintiff possessed the actual ability to earn the amount of income that defendant argues the trial court should have imputed to her. The presence of children in the home of the party is a factor under the child support formula, but is directed to "its impact on the earnings." 2004 MCSF 2.10(E)(4). In that regard, the trial court, in awarding custody to plaintiff, determined "that even during the limited time frame when the Plaintiff-mother was working full-time, she was still able to use a flexible schedule that maximized her quality time with the children." Finally, 2004 MCSF 2.10(F) provides: "Imputation *must* be applied equally to payers and payees, and to men and women." (Emphasis added.) For these reasons, we conclude the trial court abused its discretion by failing to impute income to plaintiff in an amount more truly representing her earning capacity for the purpose of calculating defendant's child-support obligation.

The award of spousal support is also within the trial court's discretion. *Gates, supra* at 432. The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). Factors that trial courts should consider include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether

either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

The same review standard applicable to the division of marital property applies to awards of spousal support. The trial court's factual findings are reviewed for clear error. *Id.* at 629; *Gates, supra* at 432. If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts. *Gates, supra* at 433; *Olson, supra* at 629-630. The trial court's dispositional ruling must be affirmed unless the appellate court is firmly convinced that it was inequitable. *Olson, supra* at 630; *Gates, supra* at 433.

With respect to spousal support, the trial court weighed a number of factors, and found that most favored plaintiff's request for spousal support. Because the trial court's award of spousal support was limited to one year and aimed at assisting plaintiff's transition to becoming a full-time working mother, we conclude that the award was just and reasonable under the circumstances of the case. *Moore, supra* at 654. Consequently, the trial court did not abuse its discretion.

V

For the reasons discussed, we remand this case to the trial court for the purposes of achieving a division of the marital property that is more congruent, i.e., fair and equitable, and for the purpose of recalculating defendant's child-support obligation on the basis of imputing to plaintiff income more reflective of her true earning

capability.[3] In all other aspects, we affirm the judgment of divorce. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[3] The parties advised the panel during oral argument that the trial court had recently heard a motion to reconsider the issue of child support, so we recognize that this issue may already have been addressed and resolved.