# Order

Michigan Supreme Court
Lansing, Michigan

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

October 24, 2008

136322

JAMES RICHARD MATCZAK,
        Plaintiff-Appellee,

v

TRICIA ANNE MATCZAK,
        Defendant-Appellant.

SC: 136322
COA: 278259
Oakland CC: 2006-717763-DM

_____/

On order of the Court, the application for leave to appeal the March 18, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

WEAVER, J., would grant leave to appeal.

CORRIGAN, J., (*dissenting*).

I would grant leave to appeal because the Court of Appeals essentially engaged in an improper de novo review of several statutory best interest factors and held that the trial court erred in finding that those factors favored either defendant wife or neither party. In addition, while I agree with the Court of Appeals that this case should be remanded to ensure that the trial court's award of attorney fees to defendant includes only fees directly associated with the divorce case, I do not agree that the trial court abused its discretion in finding that plaintiff husband was capable of paying the attorney fees.

## I. Facts and Proceedings

The disputed child custody order in this case was entered following the parties' divorce trial. Before the trial, and around the time plaintiff filed the complaint for divorce, he hid a video camera in the parties' bedroom, apparently because he suspected that defendant was having an affair. The camera caught two incidents of child abuse by defendant. Plaintiff waited to turn the digital video disc over to the Department of Human Service (DHS) child protection authorities until approximately two months later. DHS thereafter took temporary custody of the parties' children and charged defendant with felony child abuse and plaintiff with child neglect because of his delay in reporting the abuse. Both parties pleaded no contest to the charges. After the divorce trial, the trial court awarded sole legal and physical custody of the parties' three children to defendant. The court ruled that each of the statutory best interest factors, MCL 722.23,[1]

---

[1] MCL 722.23 provides:

either favored defendant or the parties equally. It also ordered plaintiff to pay defendant $1,412.54 a month in child support, $600 a month in alimony, and to pay $35,000 of defendant wife's attorney fees.[2]

The Court of Appeals vacated the trial court judgment in an unpublished opinion. With respect to the best interest factors, the panel held:

> [W]e are left with the distinct impression that the trial judge routinely engaged in something of a one-sided analysis that favored defendant. The judge consistently and significantly minimized defendant's culpable behavior while highlighting plaintiff's meaningfully less culpable

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

[2] Plaintiff earned $64,000 a year compared to defendant's annual salary of $11,000.

behavior. An objective view of the facts simply does not warrant a finding that defendant should have full physical and legal custody. [*Matczak v Matczak*, unpublished opinion per curiam of the Court of Appeals, issued March 18, 2008 (Docket No. 278259), slip op at 3.]

The panel determined that the trial court's findings concerning four of the best interest factors were against the great weight of the evidence, and concluded that the trial court abused its discretion in ruling that defendant was entitled to sole physical and legal custody.

The Court of Appeals also vacated the attorney fee award and remanded for the trial court to (1) "exclude from the attorney fee award any fees not directly associated with the divorce" and (2) "examine plaintiff's expenses to determine whether he is in fact able to bear any portion of defendant's attorney fees." *Matczak*, *supra* at 8. The panel explained that many of the fees were for work associated with the child abuse and neglect case brought by the state, not the divorce case, and that the trial court failed to make the requisite finding that plaintiff was able to bear the expense of defendant wife's attorney fees. *Id*. at 7-8.

## II. Analysis

### A. Child Custody

A trial court's findings in a child custody case are reviewed under the great weight of the evidence standard. *Berger v Berger*, 277 Mich App 700, 705 (2008). Its findings concerning each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. *Id*. A trial court's custody decisions are reviewed for an abuse of discretion. *Id.* Here, although the Court of Appeals recited the correct standard of review, it effectively engaged in a de novo review of the best interest factors. Under the correct standard of review, the Court of Appeals should have affirmed the trial court's findings.

First, the Court of Appeals found that the trial court erred in concluding that factor c (the capacity and disposition of the parties to provide the child with food, clothing, medical care, and other remedial care) favored defendant because it ignored evidence regarding plaintiff's financial and care-giving contributions to the children. The trial court, however, specifically recognized that plaintiff had a higher income than defendant and had made financial contributions to the marriage, but found that the family's financial problems were caused by plaintiff's financial irresponsibility. The record supports the trial court's finding. During the marriage, plaintiff controlled the parties' finances. He purchased the marital home and took out two mortgages on the home. Under his control, the parties also accumulated $55,000 in credit card debt during the marriage. Plaintiff husband went on to accumulate $45,000 more in credit

card debt after the complaint for divorce was filed. The trial court noted that plaintiff proposed borrowing more money to maintain the marital home, while defendant was renting a home, and found defendant's financial plan more reasonable. I think the Court of Appeals erred in rejecting the trial court's ruling that defendant is more fiscally responsible and has a more reasonable financial plan than plaintiff, thus giving her a greater capacity and disposition to provide the children with food, clothing, medical care, and other remedial care. The Court of Appeals erred by overlooking the evidence of plaintiff's financial irresponsibility. Had it not done so, it would have affirmed the trial court's finding.

Second, the Court of Appeals found that the trial court erred in finding that factor f (moral fitness of the parties) did not favor either party. The panel held that this factor should have favored plaintiff because defendant wife had physically abused the children, including two incidents that were caught on camera and resulted in charges of felony child abuse. In so holding, the Court of Appeals ignored other evidence and substituted its own view of the evidence for that of the trial court. Although the trial court did not make specific findings on this factor, the proofs showed that defendant had taken responsibility for her actions and had benefited from therapy following the child abuse incident. Evidence further showed that plaintiff had been physically violent toward defendant. In addition, the trial court noted in discussing another best interest factor that it found plaintiff's use of a hidden camera "unconscionable." It also noted that although plaintiff learned from the videotape that defendant had been abusing the children, he allowed them to stay in her care until DHS removed them.

Third, the Court of Appeals held that the trial court erred in finding that factor g (mental and physical health of the parties) favored neither party. It found that this factor should have favored plaintiff in light of the testimony of court-ordered psychologist Dr. Vasser that defendant "suffered from histrionic personality disorder with narcissistic and mild borderline features" and his conclusion that defendant "has a problem controlling her anger and would require intensive therapy." *Matczak*, *supra* at 5. Here the Court of Appeals again failed to defer to the trial court's findings of fact and credibility determinations. The trial court acknowledged plaintiff's testimony that defendant had "mental health issues," and that defendant admitted having emotional difficulties. The court, however, credited the testimony of defendant's therapist, who characterized her as having an "adjustment disorder" as a result of the divorce, financial problems, pregnancy, and her son's defiance, but "no ongoing issues." By crediting Dr. Vasser's testimony over the testimony of defendant's therapist, the Court of Appeals essentially made its own credibility findings de novo. The Court of Appeals also ignored testimony from defendant, her therapists, the DHS employee assigned to the case, and others that defendant was not mentally ill.

The Court of Appeals also failed to acknowledge evidence of plaintiff's anger problems. A DHS employee and the child's therapist both characterized plaintiff as

"very angry" with defendant. Additionally, the DHS employee testified that plaintiff appeared "emotionally unstable." She testified that plaintiff was "more difficult to deal with" than defendant and was less insightful about his anger problems and the consequences of his actions. She also testified that defendant wife took responsibility for her actions, whereas plaintiff did not.

Finally, the Court of Appeals held that the trial court erred in finding that factor k (domestic violence) did not favor either party and concluded that this factor should have favored defendant. In so holding, the Court of Appeals stated "the record . . . reflects that defendant is more inclined to engage in domestic violence than plaintiff." *Matczak*, *supra* at 5. Again, this is error by the Court of Appeals. The incident captured on video does show defendant spanking and slapping one of the children. However, other evidence revealed that plaintiff had repeatedly acted violently toward defendant. In 2000, while defendant was seven months pregnant with the parties' first child, plaintiff became angry with defendant. As she attempted to call for help, plaintiff repeatedly ripped the telephone from her hand. When defendant reached for the kitchen phone, plaintiff pushed her, causing her pregnant belly to strike the kitchen counter. Defendant went into the bedroom to get dressed, but plaintiff repeatedly pushed her onto the bed. Plaintiff fled the house, but the police caught him and took him to jail. Other incidents of plaintiff's violence were also proved. In 2006, while defendant was holding the baby, plaintiff became angry with defendant and grabbed the phone from her hand. The incident prompted defendant to call 911. In other instances, plaintiff, in fits of anger, broke a kitchen drawer and punched holes in the walls. By downplaying these incidents, the Court of Appeals again made its own de novo determination regarding the credibility of the parties and the weight of the evidence.

Because the Court of Appeals inappropriately engaged in de novo review and the findings of the trial court are not against the great weight of the evidence, I would reinstate the trial court's decision.

B. Attorney Fees

MCR 3.206(C)(2)(a) provides that a party requesting attorney fees must allege facts sufficient to show that "the party is unable to bear the expense of the action, and that the other party is able to pay . . . ." It is undisputed that defendant's $11,000 annual salary and $3,000 monthly expenses rendered her unable to bear the expense of the divorce action. The trial court found that plaintiff's $64,000 salary gave him a greater ability to pay the attorney fees in this case. I disagree with the Court of Appeals that the trial court abused its discretion in finding that plaintiff was able to pay the attorney fees. Here, plaintiff's higher salary clearly gave him a greater ability to pay than defendant. Although plaintiff had substantial monthly expenses, these expenses were of his own making. Defendant should not be punished for plaintiff's fiscal irresponsibility. Plaintiff controlled the finances of the parties during the marriage and incurred the

substantial debts for which he and defendant are now liable. He decided to take on two large mortgages and incur the credit card debt. He also incurred another $45,000 in credit card debt after he filed the complaint for divorce. If plaintiff had been fiscally responsible, he would have been able to pay defendant's attorney fees on his $64,000 salary. In light of these circumstances, I cannot say the trial court abused its discretion in holding that plaintiff was able to pay $35,000 of defendant's attorney fees. I agree with the Court of Appeals, however, that this case should be remanded to ensure that the award includes only attorney fees directly associated with the divorce case, not the child and abuse neglect case or any other matter.

KELLY, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 24, 2008

s1021

_____
Clerk