*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEVLIN SCHMIDT,

      Plaintiff-Appellee,

v

ASHLEY UGOLINI,

      Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 368319
Bay Circuit Court
Family Division
LC No. 19-007472-DM

Before: O'BRIEN, PJ., and M. J. KELLY and FEENEY, JJ.

FEENEY, J. *(concurring in part and dissenting in part)*

I agree that the trial court did not apply the proper standard of proof in reviewing the best interest factors upon determining that both parents enjoyed an established custodial environment with LMS, and that the trial court on remand needs to review all the best interest factors set forth in MCL 722.23. I disagree, however, that the trial court's determination under Factor (d) constituted clear legal error as the trial court did not incorrectly choose, interpret or apply the law when analyzing Factor (d). *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002), slip op at 9; *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 8947 (2003) (cleaned up). Rather, the great weight of the evidence standard applies to the trial court's findings fact regarding the custody factors, and those findings should be affirmed because the evidence does not clearly preponderate in the opposite direction. *Vodvarka,* 259 Mich App at 507.

MCL 722.23(d) requires that the trial court consider "the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The trial court may consider "the environments in which the child has lived *in the past* and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015) (emphasis added). Clearly, maintaining a stable environment is an important part of Factor (d). Cf. *Brown v Brown*, 332 Mich App 1, 20; 955 NW2d 515 (2020) (Factor (d), favoring the mother, was not against the great weight of the evidence because even though the children lived primarily with the father, the father's care of the children was not

-1-

satisfactory and when he relocated from Dundee to Gaylord, that change that required changes in school and church which decreased their overall stability with the father).

In *Demski,* 309 Mich App at 448-449, this Court found that the trial court failed to address the desirability of maintaining the child's continuity with the mother and instead focused on whether the child would be safe at the father's house after he testified he would no longer use medical marijuana and would keep the child safe around his dog. This Court held that "this finding was based on clear legal error and should have favored [the mother]." *Id.* In *Berger v Berger*, 277 Mich App 700, 709; 74 NW2d 336 (2008), this Court affirmed the trial court's finding under Factor (d) "because of the marital home and its surrounding environment" that provided the greatest stability for the children.[1]

Here, the trial court's determination that Factor (d) favored plaintiff-father is not against the great weight of the evidence. The trial court's August 21, 2023 order stated, in pertinent part, the following:

> Father purchased his home from his grandparents and has lived there for nine years. This was the marital home. He comes from a farming family, and lives on the same road as his parents and other family members. . . . As with many families, Father relies on his extended family to help him care for [LMS] during his parenting time. Father appears to be a hard worker, but his schedule varies depending on factors beyond his control, and therefore, his parents often watch [LMS] overnight if Father works third shift. Father's employment is stable, and he has no plans to change employment or to move. *Mother takes great issue with this* and believes that if [LMS] is not with Father the entire time she is supposed to be in his care, then the child should be with her. Mother works a daytime shift and testified that she would be the one doing the transportation and offering all the care for [LMS] when she is in her custody. *The Court found this testimony disingenuous* as Mother also uses her family to assist when necessary. Mother's view that a child should always be in the physical care of a parent rather than a family member has an *unrealistic view of today's world.* This Court has time and again seen a variety of care scenarios for parents that had to remain at work through COVID, possibly including Defendant Mother herself. Many parents have difficult shifts to deal with on a regular basis, much like Father, or they must adapt to different schedules due to employment changes. Mother, of her own volition, moved from Bay County when the parties separated, and has lived in three residences since that time. Mother's educational background has also allowed her to pursue a variety of employment opportunities,

---

[1] "The court found that the marital home was 'in a neighborhood and in a community that provides an excellent environment for the children and an excellent environment for the children to play and interact with other children.' Further, 'the children had many friends around their home and at school' and moving to a new home and school was 'somewhat disruptive to the children.' . . . Hence, it was because of the environment surrounding the marital home, its neighborhood and the children's school that the trial court determined this factor slightly favored defendant." *Berger*, 277 Mich App at 709.

which *could* as noted by the FOC investigator, propel her to additional moves in the future. This Factor favors Father. [Emphasis added.]

The Friend of the Court custody investigator, in his May 30, 2023 report and recommendation regarding school choice, made the following findings, in pertinent part, regarding Factor (d):

> While Mother is not as deeply rooted in her community as Father, she has purchased a home and it appears that this residence is far more permanent than her prior living situations. Given the totality of the information provided to the undersigned, Mother's history of changing jobs and moving more frequently than Father, her ability to find work in nearly any community, and with consideration of her recent purchase of a home, the writer still believes there is a higher chance of continuity of [LMS]'s physical home with Father. . . . Mother has paned Father for his lack of ambition during the custody interview and in written filings with the Court. *When considering her criticisms of Father and coupling them with Mother's statements and actions regarding her own professional advancement,* the undersigned is led to believe that Mother and her living situation are heavily career driven. The pursuit of upward mobility in her career is a strong motivator for Mother. Through Mother's *prior actions* she has proven that she is willing to sacrifice stability for mobility. The Factor Favors: Slightly Father. [Emphasis added.]

Clearly, both the trial court and the custody evaluator had the opportunity to determine the parties' credibility and statements during the August 3, 2023 hearing and the FOC evaluation, respectively. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Both the trial court and the FOC evaluator supported their conclusions regarding the relative stability of plaintiff's home and defendant's home as well as defendant's past actions of moving to three homes after leaving the marital home. It was not speculative for the court to considering defendant's statements in furtherance of "her own professional advancement" regarding the future possibility of change. And the trial court only stated that defendant's plans *could* lead to additional moves. But this was not the crux of the court's determination that Factor (d) favored plaintiff, however.

Even assuming the trial court should have ignored defendant's career plans, the trial court provided sufficient evidence in the record to support its findings under Factor (d). The court focused on plaintiff's roots in the community and in the former marital home. The trial court noted defendant's "disingenuous" criticism of plaintiff when she, like plaintiff, used her family members to assist in caring for LMS when defendant had to work. The trial court also found defendant's view regarding children being with parents and not relatives to be "unrealistic" in light of work schedules, the pandemic, and other realities in today's world. The trial court concluded that plaintiff had set down roots in his grandparents' home, had lived there for 9 years, worked close by, and intended to continue working the family farm. Indeed, there is sufficient evidence to support the trial court's determination that plaintiff had a preference under Factor (d) given that the child had lived in plaintiff's safe, satisfactory home environment that would be continued and maintained to provide LMS with somewhat more stability and continuity. This is not to say that defendant's home is unstable or unsatisfactory, but Factor (d) focuses on *how long* the *child* has lived in a stable environment and the desire to *continue and maintain* that environment. MCL 722.23(d).

In summary, I believe the trial court made findings of fact that were supported by the evidence and did not commit clear legal error in its analysis of Factor (d). It was not erroneous to conclude that plaintiff's home provides somewhat greater stability for LMS as it is the former marital home, it is close to and on the same road as extended family, and it is the home LMS has always known as her home. Accordingly, I would conclude that the trial court's findings regarding Factor (d) were supported by the great weight of the evidence and did not clearly preponderate in the opposite direction. *Vodvarka*, 259 Mich App at 507.


/s/ Kathleen A. Feeney