*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS J. O'BRIEN, JR.,

Plaintiff-Appellee,

v

ANN MARIE D'ANNUNZIO,

Defendant-Appellant.

UNPUBLISHED
February 27, 2020

No. 347830
Oakland Circuit Court
Family Division
LC No. 2004-693882-DC

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

MURRAY, C.J. (*concurring*).

I concur in the majority opinion's analysis and conclusion to affirm the trial court's February 19, 2019 order regarding custody and parenting time. I write separately to point out several ways in which the dissenting opinion misses the mark.

## I. THE DISSENT'S THEORY

The dissent's main theory is that defendant could not (and did not) get a fair decision from the trial court because the trial court entered an ex parte order changing custody and parenting time on November 6, 2017. And, the theory goes, had four witnesses (two police officers and two physicians) testified on November 6, 2017, plaintiff's allegations would have been proven false, and no changes to the prior orders would have occurred. Though we all agree that the trial court erred in changing custody and parenting time without an actual hearing (a fact the trial court implicitly recognized by scheduling a hearing the very next week), the dissent's underlying assumption is simply that–an assumption as to how the trial court would have ruled had a hearing been held–and the assumption as to the outcome had a hearing been held is based upon the dissent's own view of the evidence, gleaned from the cold record.

Initially, it is important to point out that when plaintiff came to court on November 6, 2017, the trial court was already aware that the custodial situation between the parties had again turned for the worse. The record shows that since August 2017, both parties had filed emergency motions regarding custody and parenting time, both motions were denied on an emergency basis, but as a result of the motions, two orders were entered: one for a custody and parenting time investigation,

-1-

and another for interim parenting time.  Thus, what was presented by plaintiff to the court on November 6, 2017, was a continuation of what had been occurring for months.

Additionally, the dissent asserts that if two police officers and two physicians would have testified on November 6, 2017, then the trial court would have never entered the ex parte order. If, however, a hearing had been held that day, who is to say that only those four witnesses would have testified?  If we are going to speculate about what could have occurred had a hearing been held, it seems safe to assume that the parties and the children would have also participated in the hearing.  And, if they did, it is also safe to assume that the trial court would have made the same credibility findings and conclusions that it did in its final opinion rendered after nine days of hearings.  In other words, it likely would have found plaintiff credible, and defendant to have serious behavioral and emotional issues that seriously affect her ability to parent the teenagers. Thus, if we are going to speculate as to what would have happened on November 6, 2017, we should at least guide it by looking to the complete evidence presented during the case.

Consequently, the dissent's premise is built upon speculation and assumptions (who would have testified, how the trial court would have ruled, etc.) and, as shown below, to reverse the ultimate order would necessitate casting aside well-established principles and recent caselaw that supports the trial court's decision.

## II. THE TRIAL COURT'S OPINION

It is not often that our Court overturns a trial court's custody decision, let alone a decision explained in a thorough 55-page opinion, and which was issued after nine hearing days, where 15 witnesses and numerous exhibits were submitted and analyzed by the court.  There are a couple of overarching reasons why custody decisions, and especially thorough ones like this, are rarely overturned.  First, custody decisions are one of the few decisions that remain subject to the most onerous abuse of discretion standard existing in Michigan: the appellant must show that the trial court's ultimate decision "is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017) (quotation marks and citation omitted).  Custody decisions like this one therefore remain subject to "the utmost level of deference." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008).  Second, Michigan courts have historically and correctly concluded that it is the trial court, and not the appellate court, that is most familiar with the family, the family circumstances, and has heard first-hand the testimony coming from family members and other witnesses familiar with the family.  *Brandt v Brandt*, 250 Mich App 68, 71-72; 645 NW2d 327 (2002) (recognizing that "[t]he 'one family, one judge' approach allows the judge to be intimately familiar with all the proceedings involving the parties.").  Through regular motion hearings, conferences, and evidentiary hearings, trial courts become "familiar" with a case and those involved.  *Id*.  Here, the trial court noted at the start of its opinion that these parents and children had been before the court on many different occasions, and almost always for custody and parenting time disputes.

And that is also why, no matter what type of case is involved, our Courts have long recognized the ability of *trial courts* to pick up on the many nuances of witness testimony, which places trial courts in the optimal position to not only resolve credibility issues, but to determine

*what weight* to give testimony. What the Court stated in *Hartka v Hartka*, 346 Mich 453, 455; 78 NW2d 133 (1956), is applicable here:

> This matter being an appeal from a decree of divorce is, of course, heard here on the record *de novo*; but the Court generally gives great weight to the findings of fact of the trial judge.
>
> The trial court is our arena for the test of truth. There the contesting parties and their witnesses appear face to face in flesh and blood with weight and size and demeanor under the eye of the trial judge. He sees the averted glance, marks the hesitation, detects the note of hysteria in the voice of a witness whose words may be calculated to deceive. The cold words on a printed page show none of these essentials to the search for fact.

See, also, *Kessinger v Kessinger*, 360 Mich 528, 532; 104 NW2d 192 (1960); *Vollrath v Vollrath*, 163 Mich 301, 303; 128 NW 190 (1910).[1]

That is not to say that we, as an appellate court, abdicate our appellate review when reviewing these decisions. Our appellate duty is, however, fully and properly exercised when enforcing the "utmost level" of deferential review to the challenged decision. And, just as importantly, we *do* abdicate our proper appellate role when we take on the fact-finding role, picking and choosing what evidence is most compelling or persuasive, in deciding for ourselves what implications and inferences can be made from the evidence, and what evidence the trial court *should have* found persuasive. Acting in that manner raises serious concerns. See, e.g., *United States v Raddatz*, 447 US 667, 681 n 7; 100 S Ct 2406; 65 L Ed 2d 424 (1980) ("[I]t is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions. . . .").

The dissenting opinion is well-written and thoughtful. However, the opinion goes well beyond the highly deferential standard of review by engaging in a microscopic and one-sided review of the evidence and procedural background that led to the ultimate decision. Indeed, if one were to read the dissent in isolation, one would conclude that the trial court had no regard for defendant, and intentionally disregarded all credible evidence in concluding that defendant was not entitled to custody or, at the time, parenting time. But, as the majority opinion makes clear, that is far from the case. Instead, as the majority opinion acknowledges, despite several legal errors that occurred during the process, that the trial court ultimately issued an opinion and order

---

[1] This law alone essentially precludes a reversal of this decision. It is impossible for an appellate court to disregard a trial court's finding that one of the party's testimony "vacillated between laughing, crying, tense, and calm seemingly independent of anything occurring in the courtroom, the question posed to her, or anything about the particular incident about which she testified." None of these descriptions of a witness's mannerisms are evident from a cold transcript.

that was extraordinarily thorough, addressed all issues presented by the parties (as well as some of the concerns raised by the dissent), and adhered to the controlling child custody factors. In the end, the dissenting opinion merely represents a different opinion as to what evidence was best to rely upon in making this custody decision.[2] But a mere difference of opinion regarding the evidence is not a basis for reversal, even under a less deferential standard of review. *People v Cress*, 468 Mich 678, 690-691; 664 NW2d 174 (2003).

According to the dissent, the trial court was tainted against defendant as a result of one ex parte hearing, disregarded facts supporting defendant's position, misrepresented evidence to make it look more harmful to defendant, had no interest in helping rebuild the relationship between defendant and the children, and allowed teenagers to dictate the situation. A reading of the trial court's opinion proves otherwise. For example, the dissent correctly emphasizes language within MCL 722.27a(1) regarding a trial court's obligation to grant parenting time in a frequency, duration, and type reasonably calculated to "promote a strong relationship between the child and the parent granted parenting time." This mandate is familiar to anyone who practices domestic-relations law in this state, and the trial court was quite aware of the statutory duty, as it specifically quoted MCL 722.27a(1) and the need to promote parenting time.

The dissent uses this law as a springboard to argue that the trial court abdicated its duty to help rebuild the relationships through parenting time. The trial court did no such thing. Instead, it just came to a different conclusion than does the dissent. In addressing parenting time, the trial court recognized that, in light of its findings regarding defendant's inability to control her negative feelings about plaintiff, her inability to properly communicate and deal with her children, and to otherwise control her temper, granting parenting time would "further 'endanger the child's physical, mental, or emotional health.' " MCL 722.27a(3). The court in fact quoted a recent decision of this Court, *Luna v Regnier*, 326 Mich App 173, 180-181; 930 NW2d 410 (2018), which recognized that *forcing* parenting time between children and a parent may at times cause emotional trauma, and further drive a wedge between parent and child:

> In regard to ZR, our review indicates that forced parenting time, especially in light of ZR's strongly expressed preference that he be allowed to consider a relationship with defendant in the future at his own discretion, was likely to cause emotional trauma and to drive a wedge further between mother and child, not foster a strong relationship. See MCL 722.27a(1).

In *Luna*, *id*. at 181, the parent that was restricted from engaging in parenting time had been restricted for several years, unlike the situation here where defendant was deprived of parenting time (except for sporadic phone calls) for just over a year before the decision was issued.

---

[2] As noted, there were 15 witnesses. The dissent addresses the testimony of only six of those, and does not address the credibility findings made by the trial court about the parties, i.e., the parents of the children. Thus, even if the dissent is correct about what more accurate testimony could have been presented in November 2017, the apparently untainted evidence of nine other witnesses (including all four family members) would still support the trial court's decision.

Moreover, because the trial court recognized the significance of its ruling, it permitted, consistent with *Luna*, *id*. at 183, "periodic hearings to determine whether reinstituting parenting time would be in the children's best interests." There is no question that the trial court fulfilled its responsibility under MCL 727.27a(1) and (3), even if the result was no current parenting time for defendant.[3]

*Luna* also resolves the dissent's sua sponte conclusion that reunification therapy is necessary to help restore a relationship between defendant and her children. For one, it is certainly not our role to make recommendations or issue orders regarding what type of therapy should be utilized for a particular family. Second, the *Luna* Court specifically addressed a trial court's decision to not order reunification therapy, and to instead opt for periodic hearings on parenting time. *Id*. Not surprisingly, the *Luna* Court concluded which option to take was within the trial court's discretion:

> Finally, defendant argues that the trial court's order suspending her parenting time without ordering reunification therapy constituted a de facto termination of her parental rights. While we do not believe that the trial court abused its discretion by suspending defendant's parenting time and declining to order reunification therapy, we do believe that it is necessary to remand this case and direct the trial court to conduct periodic hearings to determine whether the children wish to reinitiate contact with defendant and whether resumption of parenting time would be in their best interests. [*Id*.]

The dissenting opinion also repeatedly chastises the trial court (and plaintiff) for purportedly giving too much power to the children as to whether parenting time should occur. The *Luna* Court, however, concluded that the children's wishes regarding reinitiating contact with a parent were a highly relevant consideration in whether to resume parenting time. *Id*. Again, it is the trial court's decision to determine the weight to be given the children's preference because the trial court, not us, has had the opportunity over an extended period of time to get a feel for the family dynamics at issue. *Brandt*, 250 Mich App at 74. Both of these children were also 15, and quite possibly (only the trial court would know for sure), articulated mature answers to the long-lasting and difficult family dynamics.

Another concern is that the dissenting opinion ignores the trial court's long familiarity with the case. Although this judge has not handled the case from the outset, it having been filed in 2004, the trial court did familiarize itself with the history of this case that dates back to 2005. As the trial court recounts in its opinion, there have been numerous orders and hearings involving

---

[3] The dissent's citation to *In re Kellogg*, __ Mich App __; __ NW2d __ (2020) (Docket No. 349930), is inapt. That case dealt with the law governing the termination of parental rights, and this case does not. Additionally, we must presume that the trial court will be able to grant defendant parenting time if evidence is brought forth warranting the change. Trial courts addressing custody and parenting time issues are required to acknowledge that people and circumstances can change, and must consider that potential until jurisdiction over the children is lost.

these parents and these children in 2005, 2007, 2008, and 2009, and then those that began in 2017. The trial court was aware that, in the first few years after initiation of this case, there were repeated orders regarding the need for a parenting time coordinator, and the recommendations made regarding custody and parenting time.

Finally, the dissenting opinion has one theory of the case, while the trial court had another theory of the case. Both theories have a basis in the evidence, but as set forth in the initial part of this opinion, it is not our duty as appellate judges to decide which facts are more persuasive or worthy of more weight. It is enough to say, as the majority does, that evidence supported the trial court's findings.

Nevertheless, several factual points need to be made. First, the record does not support the dissenting opinion's conclusion that the trial court simply "terminated" defendant's rights without any actual evidentiary support. To the contrary, the trial court recognized (among many other things) that since at least 2008, defendant has had great difficulty controlling her emotions and her hatred for plaintiff, and exhibited these feelings through poor behavior and antics in front of the children. And, she continued in her ways even when she knew it was causing significant problems with her relationships. The court cited to a 2008 ADEPT report that outlined defendant's numerous parenting difficulties, attitude problems, and disruptions that had still not been rectified by 2018, despite many years of coparenting. Importantly, the concerns the trial court had with defendant were not attributable to the fact that she had personality disorders (Dr. J. Scott Allen, defendant's psychiatrist, testified that defendant has ADHD, major depression disorder and PTSD, and treats her with a combination of psychotherapy, counseling, and medication), a fact the dissent cannot seem to overcome.[4] Instead, the court focused on defendant's tortured relationship with her children (which existed, according to the evidence and the court's findings, well before November 6, 2017), and concluded that defendant's behaviors and dealings with her children and plaintiff led to the existing severed relationship. The record and the trial court's finding are replete with examples of how defendant would routinely interfere with the children's lives in an abnormal and unhealthy way.[5]

---

[4] The dissent discredits plaintiff for opining that defendant has a "mental illness." The dissent may be correct, but the only relevant point is that the trial court specifically gave *no weight* to that testimony, so what plaintiff said had nothing to do with the trial court's decision.

[5] For example, it is undisputed that on one occasion defendant *and her attorney* showed up at the children's school in the middle of the day, and attempted to extract them without any basis for doing so. A school employee testified that despite many children of divorced parents attending the school, he had *never* seen anything like what defendant did. Also, during a therapy session with the children, defendant demanded that the therapist call *defendant's attorney* on the speaker phone because she was outraged with certain aspects of the therapy. Other evidence showed that defendant had many other improper communications or interactions with the children. Although it is certainly true, as the dissent states, that teenagers should not control a parenting situation, it is equally true that a parent needs to understand the complications and special circumstances that teenagers are experiencing. As the trial court found, for many years prior to these most recent

-6-

Lastly, although the trial court did err in completely eliminating the parenting time and custody of plaintiff without an evidentiary hearing on November 6, 2017, the trial court's final determination on the existence of a change in circumstances was based upon evidence that *predated* the November 6, 2017 motion. And, with respect to the delay between November 15, 2017, and the first day of the evidentiary hearing on March 20, 2018, *the parties* agreed to adjourn several scheduled hearing dates before March 20, 2018, because, to their credit, they were seeking to resolve these disputes without court intervention. Indeed, at a January 17, 2018 motion hearing, the court again recognized the importance of having a quick hearing, and set it to start two days later, January 19, 2018. But it was adjourned. Thus, the trial court was not acting in any type of dilatory manner in scheduling the evidentiary hearing, and in fact, repeatedly stated at the motion hearing about the need to conduct the hearings in light of the order suspending defendant's parenting time.

For these reasons, and for those reasons set forth in the majority opinion, I conclude that under the proper standards of review, the trial court's decision must be affirmed.

/s/ Christopher M. Murray

---

hearings, and continuing up to and including these hearings, defendant exhibited an inability to understand these relationships, and in fact, exacerbated them.