*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL L. HAWES,

      Plaintiff-Appellant,

v

RACHEL L. CROMIE,

      Defendant-Appellee.

UNPUBLISHED
January 26, 2023

No. 360951
Lenawee Circuit Court
LC No. 12-038548-DC

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Michael Hawes, and defendant, Rachel Cromie, are the unmarried parents of a thirteen-year-old son, AH. For more than ten years, AH's parents have litigated over almost every aspect of his life. Throughout the last decade, the parents' relationship has become so acrimonious that neither the court system nor trained professionals can manage the fallout from the dysfunction. Although AH still loves both of his parents and wants to have a close relationship with each one of them, they seem unable to interact in a manner that reduces, rather than exacerbates, AH's stress level. Faced with a wide range of intractable disputes, the trial court awarded defendant sole legal and physical custody of AH to bring some stability to AH's life. We affirm.

## I. FACTUAL BACKGROUND

Defendant gave birth out of wedlock to plaintiff's natural and legal son in July 2009. The parties ended their romantic relationship soon thereafter and set up separate residences. In October 2012, plaintiff filed a complaint requesting joint legal and physical custody of AH and asking that child support be ordered under the Michigan Child Support Guidelines. On July 23, 2013, the trial court entered a consent judgment addressing custody and parenting time. Specifically, the consent judgment granted plaintiff and defendant joint legal custody of AH, defendant was granted primary physical custody of AH, and plaintiff was afforded parenting time and ordered to pay child support.

From 2013 until 2018, AH—who was diagnosed with transient tic disorder and Tourette's Syndrome during the proceedings—attended four different schools and received homeschooling for short periods of time. On March 5, 2018, plaintiff moved the trial court to grant him sole legal and physical custody of AH. The trial court ordered the parties to submit to a custody evaluation

-1-

with Dr. Thomas Muldary, who described plaintiff and defendant as having "an extensive eight-year history of chronic conflict and an inability or unwillingness to communicate and cooperate on matters pertaining to their son." Dr. Muldary recommended that the two parents should work with a "parenting coordinator" or complete a parenting program to decrease "open conflicts" and "perhaps" preserve "joint legal custody . . . ." Dr. Muldary also recommended plaintiff's parenting time be temporarily increased. On December 4, 2018, the trial court entered a consent order that provided for joint legal custody, left defendant with sole physical custody of AH, awarded plaintiff additional parenting time, and promised a further review of legal custody in six months.

Despite the entry of the consent order, the parties' participation in a parenting program was unsuccessful in the long term and the parties remained unable to effectively communicate or make decisions concerning AH. Thus, the trial court determined it was necessary to hold an evidentiary hearing on the issues of custody. The trial court ordered an updated custody evaluation, which Dr. Muldary conducted in 2019. The evidentiary hearing started in February 2020. It was scheduled to resume in May 2020, but because of the COVID-19 pandemic, it was adjourned several times. The trial court completed the evidentiary hearing over several days between June 2021 and January 2022. Testimony focused on the parties' relationships with AH, the parties' differences of opinion on AH's education and medical care, and the parties' mutual failure to foster a relationship between AH and one another. The fact that plaintiff questioned the validity of AH's diagnosis of Tourette's Syndrome, but failed to obtain a second opinion in a timely manner, was also repeatedly discussed. At the close of proofs, the trial court took the matter under advisement and conducted an *in camera* interview with AH.

On March 21, 2022, the trial court issued an opinion and order finding that proper cause existed to review matters of custody and that an established custodial environment existed solely with defendant. The trial court reviewed the best-interest factors and found factors (a), (b), and (c) favored defendant. The trial court found factor (d) favored plaintiff, and that all other factors were "neutral." It also noted that it had interviewed the minor child and taken his preferences into consideration. The trial court found that clear and convincing evidence established that a change of custody was in AH's best interests, noting the parties were unable or unwilling to work together to reach an agreement on AH's education and medical treatment. The trial court found that it was in AH's best interests for defendant to have sole legal and physical custody. Plaintiff was provided parenting time. Plaintiff now appeals.[1]

## II. LEGAL ANALYSIS

Although plaintiff filed the motion that put matters of custody in issue, he asserts that the trial court erred when it modified the existing custody arrangement by giving defendant sole legal and physical custody of AH. "All custody orders must be affirmed on appeal unless the trial court committed a palpable abuse of discretion, made findings against the great weight of the evidence, or made a clear legal error." *Mitchell v Mitchell*, 296 Mich App 513, 517; 823 NW2d 153 (2012). In custody cases, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or

---

[1] The March 2022 order also addressed other motions that were pending before the trial court that are not at issue before this Court.

the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). A trial court commits a clear legal error "when it incorrectly chooses, interprets or applies the law." *Merecki v Merecki*, 336 Mich App 639, 644; 971 NW2d 659 (2021) (quotation marks omitted). In addressing plaintiff's challenges to the trial court's rulings on custody, we must faithfully adhere to these deferential standards.

## A. PROPER CAUSE OR CHANGE OF CIRCUMSTANCES

Based upon the consent order entered on December 4, 2018, plaintiff and defendant shared joint legal custody of AH, but defendant had "sole physical custody." Plaintiff called the question of custody by seeking a modification that would grant him sole legal and physical custody of AH. In his "motion for order to show cause and to modify custody" filed on January 21, 2020, plaintiff demanded that the trial court "[m]odify the Custody Order in this matter, to provide Plaintiff Father with physical and legal custody" of AH. To consider a modification of custody, a trial court must first find "proper cause or a change of circumstances" sufficient to warrant a change in an existing custody order. *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003). Plaintiff necessarily acknowledged the existence of proper cause or a change of circumstances in his motion to modify custody, so he cannot complain about the lack of such a predicate in contesting the ruling of the trial court. Indeed, we have explained that when "the parties' disagreements have escalated and expanded to topics that could have a significant effect on the child's well-being[,]" there exists proper cause or a change of circumstances sufficient to justify revisiting a custody decision. *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011). Here, plaintiff does not appear to challenge the existence of proper cause or a change of circumstances, so we conclude that the trial court had the authority to revisit the issue of custody.

## B. ESTABLISHED CUSTODIAL ENVIRONMENT

"Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents[.]" *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020). "The established custodial environment is the environment in which 'over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort.' " *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010). " 'An established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort.' " *Demski v Petlick*, 309 Mich App 404, 445; 873 NW2d 596 (2015). Conversely, there can exist an established custodial environment with only one parent. *Id.* at 447.

Here, the trial court concluded that an established custodial environment existed only with defendant. The undisputed evidence revealed that AH spent the majority of his time in defendant's care throughout his life, and that defendant was his primary caregiver during that time. Defendant ensured that AH's physical needs were met, that AH was enrolled in school, and that AH received medical care. In contrast, plaintiff agreed that he had never transported AH to dental appointments. Plaintiff also did not attend most of AH's medical appointments. According to defendant, when plaintiff attended appointments, he interfered while in AH's presence and made it very difficult to discuss "what's going on." This made AH uncomfortable. Furthermore, defendant's testimony is supported by the 2019 custody evaluation, which indicates that AH felt more "unconditional love"

from defendant and considered her as the "more supportive, trustworthy, patient, and comforting" parent. AH also regarded defendant as "the parent who most reliably meets his needs." In contrast, plaintiff doubted AH's Tourette's Syndrome diagnosis over several years, and evidence showed that he denigrated defendant in AH's presence, which is not behavior that would foster a secure relationship. Thus, AH felt more secure in his relationship with defendant, with whom he spent the majority of his time and to whom he looked "for guidance, discipline, the necessities of life, and parental comfort." See MCL 722.27(1)(c). Consequently, the trial court's conclusion that an established custodial environment existed only with defendant was not against the great weight of the evidence.

## C. BEST-INTEREST FACTORS

Turning to the central issue on appeal, plaintiff contends that the trial court erred in granting defendant sole legal and physical custody of AH. We must bifurcate our resolution of the separate issues of legal custody and physical custody. Under the consent order entered December 4, 2018, defendant already had sole physical custody of AH, so a continuing award of sole physical custody to defendant did not alter AH's custodial environment in any respect. But the trial court's award of sole legal custody modified the award of joint legal custody in the order of December 4, 2018. Under Michigan law, "when parents share joint legal custody . . . 'the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.' " *Pierron*, 486 Mich at 85. By awarding sole legal custody to defendant, the trial court divested plaintiff of the legal right to participate in the process of making important decisions for AH. Thus, the trial court employed the stringent standard of clear and convincing evidence in weighing the 12 best-interest factors that govern custody disputes. See *id.* at 86.

After the trial court identified the proper burden of proof, the court was required to consider the 12 best-interest factors identified in MCL 722.23. "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts "are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id*. (quotation marks and citation omitted). Plaintiff challenges the trial court's findings by clear and convincing evidence on factors (a), (b), (c), and (j), which are described in MCL 722.23 as follows:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

* * *

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and

the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

The trial court found that factor (a) favors defendant, but plaintiff insists this factor should favor both parties equally. Plaintiff correctly notes that AH is bonded with both parties, loves both parties, and feels loved by both parties, but the evidence reveals that AH feels more unconditional love from defendant. Because of this, AH prefers defendant and is more likely to look to her for support. Accordingly, the trial court's finding that factor (a) weighs in favor of defendant was not against the great weight of the evidence.

The trial court determined that factor (b) favors defendant. Dr. Muldary noted that plaintiff "does not trust or like most authority figures including teachers and administrators, or others whose views, beliefs, and attitudes differ from his own." That analysis is consistent with the record, and the evidence further bolsters the trial court's finding that defendant is better equipped to work with school personnel. Beth Banks, who was AH's first-grade teacher, testified that defendant "wanted to do what she could to help" AH, "participated in things," was "very supportive," and was "quick to answer e-mails." Although plaintiff attended conferences and picked up AH from school, Banks testified that plaintiff's attitude and views made her "uncomfortable." In addition, plaintiff argues that the trial court failed to consider that defendant had purposefully excluded plaintiff from AH's life and unilaterally made decisions that had a negative impact on AH. While the record indicates that defendant's choices of schools and frequent changes in AH's schools show a lack of judgment resulting in instability, defendant was proactive in ensuring that AH remained in school. Plaintiff did not demonstrate the same commitment. Indeed, plaintiff opposed AH attending public school at one point, but then refused to assist defendant in paying for private school. Plaintiff also refused to help defendant pay for AH's homeschooling materials in the months leading up to the custody determination. Thus, the trial court's finding that factor (b) weighed in favor of defendant was not against the great weight of the evidence.

The trial court reasoned that factor (c) favors defendant by considering the parties' incomes and finding that defendant had "a greater disposition to financially provide for herself and" AH. Indeed, factor (c) "does not contemplate which party earns more money; it is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs." *Berger*, 277 Mich App at 712. Thus, factor (c) looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income. *Id.* The record simply does not support plaintiff's claimed capacity or disposition to provide for AH's material needs. Plaintiff has a history of unstable employment. He testified that he engages in automobile repair from the garage at his home even though he worked as a full-time mechanic in the past.[2] Plaintiff testified he also sells vehicles, but plaintiff did not have a dealer's license or permission from the city to operate his business from his home. In addition, plaintiff complained about paying child support, he was often delinquent in paying child support, and he was more than

---

[2] Although plaintiff argues that he was unable to return to his full-time job because of a knee injury, the trial court clearly found this testimony to be incredible.

$2,000 in arrears when the trial court rendered its opinion and order in 2022. Plaintiff also failed to assist defendant in paying for AH's private school, homeschooling materials, and extracurricular activities. Therefore, the trial court's finding that factor (c) weighed in favor of defendant was not against the great weight of the evidence.

The trial court found that factor (j) "weighs equally" because both parties failed to facilitate AH's relationship with the other parent. Plaintiff contends that this factor should have weighed in his favor. The record reveals that defendant failed to facilitate plaintiff's relationship with AH and was critical of plaintiff, but the record also shows that plaintiff is fixated on denigrating defendant. For example, the 2018 custody evaluation pointed out that plaintiff had "unrelenting criticisms of and complaints about" defendant that were "so intense and pervasive that he had nothing positive to say about her as a parent or as a person." And although plaintiff "was not as intensely critical of" defendant during the 2019 evaluation, Dr. Muldary opined that plaintiff merely seemed to be "restrain[ing] his bitterness more effectively than he did previously." The trial court's finding that factor (j) weighed equally was therefore not against the great weight of the evidence.

In sum, the trial court considered the best-interest factors and the facts and circumstances of this acrimonious case in great detail. The trial court's decision to award sole legal and physical custody of AH to defendant was not an abuse of discretion. Sadly, this is yet another case where "joint custody was not an option, because the record reflected that the parties would not be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." *Wright v Wright*, 279 Mich App 291, 299-300; 761 NW2d 443 (2008).

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto