*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONIQUE ROSE MARIE CADEAU,

UNPUBLISHED
May 23, 2024

Plaintiff-Appellant,

v

No. 368094
Baraga Circuit Court
Family Division
LC No. 2015-006549-DS

WAYNE JOSEPH ANDERSON,

Defendant-Appellee.

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's opinion and order modifying the parties' child-custody arrangement by awarding defendant sole legal and physical custody of the parties' minor child, BAA, and modifying the parties' parenting time. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties share joint legal custody of BAA.[1] Plaintiff resides in Baraga County, Michigan, and defendant resides in Arizona. Under the custody order entered in 2018, BAA has resided with plaintiff in Michigan from mid-January to mid-July and with defendant from mid-July to mid-January, and the parties had alternated physical custody and parenting time for BAA's major academic breaks and holidays every other year. Whichever party BAA was residing with at the time of a parenting-time exchange was responsible for arranging BAA's transportation and paying travel costs. Because of the split in physical custody and parenting time, BAA spent half of her academic year attending school in Michigan and the other half of her academic year attending school in Arizona.

In May 2022, plaintiff filed a motion to change custody and parenting time, alleging, among other things, that BAA was significantly struggling both academically and socially due to

---

[1] The trial court initially granted temporary, sole legal custody to defendant, but it later granted the parties joint legal custody.

the split schoolyear and that defendant's home in Arizona was an unsafe environment for BAA. In his response and cross-motion for change of custody, defendant agreed that BAA had struggled significantly as a result of the split schoolyear, but he disagreed that his home was an unsafe environment for BAA. In essence, the parties agreed that BAA's split schoolyear warranted a change of custody and parenting time, but they disagreed about where BAA should primarily reside and attend school; plaintiff believed that it was in BAA's best interests to spend her entire school year in Michigan and summers in Arizona, while defendant believed that it was in BAA's best interests to spend her entire school year in Arizona and her summers in Michigan.

An evidentiary hearing on both motions was held in November 2022, at which both parties testified, presented additional witnesses, and presented written evidence. The trial court announced its preliminary findings on the record in December 2022, finding that the evidence established that an established custodial environment existed with both parties and that both parties had presented sufficient evidence to establish proper cause or a change of circumstances, but it held the matter of custody in abeyance until after BAA's current schoolyear ended in June 2023 so that the parties could present additional proofs and so that the court could consider BAA's final grades from each semester. Another evidentiary hearing was held in August 2023, at which both parties testified, presented additional witnesses, and presented written evidence regarding events that had occurred between the December 2022 and August 2023 hearings. The August 2023 hearing also acted as a hearing to address several motions filed by defendant, including a motion for an order to show cause for plaintiff's failure to comply with the custody and parenting-time order, which was based on plaintiff's failure to return BAA to defendant's custody in June 2023. At the time of the August 2023 hearing, plaintiff still had not returned BAA to defendant's custody as required by the custody order.

In September 2023, the trial court issued a written opinion and order detailing its findings of fact and its conclusion regarding custody and parenting time. The trial court again found that both parties had sufficiently shown proper cause or a change of circumstances and that, while BAA's relationship with defendant had become significantly more strained since the December 2022 hearing, an established custodial environment nonetheless still existed with both parties. The trial court considered the best-interest factors set forth in MCL 722.23 as well as several parenting-time factors set forth in MCL 722.27a(7), and concluded that defendant had established by clear and convincing evidence that a change of custody was in BAA's best interests. The court also found plaintiff in civil contempt for failing to return BAA to defendant's custody in June 2023, and it ordered plaintiff to reimburse defendant's attorney's fees, expenses related to bringing his motion for an order to show cause, and expenses related to his failed efforts to return BAA to his custody as a sanction. The trial court noted that it had considered an award of joint legal custody but, based on its previously-detailed findings, it believed that it was necessary "to enter an interim order granting [defendant] temporary legal custody," and awarded "temporary full legal and physical custody" of BAA to defendant. The trial court further stated that, once plaintiff returned BAA to defendant's custody and BAA was enrolled in school in Arizona, "joint legal custody will be restored to [plaintiff] with primary physical custody remaining with [defendant]." The trial court ordered that BAA primarily reside with defendant during the schoolyear and that plaintiff receive parenting time during the summer and extended school breaks. This appeal followed.

## II. STANDARD OF REVIEW

"In child-custody disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.'" *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. This Court applies "three standards of review in custody cases." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). Factual findings are reviewed under the great weight of the evidence standard. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion. In child custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___NW2d ___ (2023) (Docket No. 362488); slip op at 7 (quotation marks and citation omitted).

## III. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues that the trial court erred by finding that an established custodial environment existed with both parents. We disagree.

"When resolving important decisions that affect the welfare of the child, the court must first consider whether the proposed change would modify the established custodial environment." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010). MCL 722.27(1)(c) provides, in pertinent part:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

"An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). It concerns the child's physical and psychological environments and "is marked by security, stability, and permanence." *Id*. "Factors to be considered in determining whether an established custodial environment exists include the age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship." *Pierron*, 282 Mich App at 244 (quotations omitted). "[A] custodial environment can be established in more than one home." *Ritterhaus v Ritterhaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007). Whether an established custodial environment exists is a question of fact. *Pennington*, 329 Mich App at 570.

Plaintiff emphasizes that BAA's relationship with defendant had significantly weakened between the December 2022 and August 2023 hearings. The trial court indeed found that there had been a notable deterioration in the once-strong bond between BAA and defendant during this time period; however, the court also found that, while defendant was not completely blameless in the "disruption of his bond" with BAA, the disruption was largely attributable to the fact that plaintiff had engaged in behavior that was designed "to further drive a wedge between [BAA] and her dad." Plaintiff's conduct included scheduling BAA's summer activities so that they interfered with defendant's designated parenting time, failing to return BAA to defendant's care as required by the custody and parenting-time order, failing to facilitate defendant's multiple attempts to effectuate parenting-time exchanges in June and July 2023, failing to encourage BAA to return to defendant's custody as required, and recording a failed parenting-time exchange in July 2023 in an attempt to paint defendant as an abusive parent.

Plaintiff argues that the trial court committed clear legal error by considering her misconduct in determining that an established custodial environment existed with defendant. We disagree. When determining whether an established custodial environment exists, the focus is on the care of the child during the period preceding the custody trial. See *Kubicki v Sharpe*, 306 Mich App 525, 540; 858 NW2d 66 (2014). A trial court's "concern is not with the reasons behind the custodial environment, but with the existence of such environment." *Treutle v Treutle*, 197 Mich App 690, 693; 495 NW2d 836 (1992). The trial court did not base its finding that an established custodial environment existed on the fact of plaintiff's misconduct, rather, it considered plaintiff's actions as part of the factual circumstances during the relevant time period that were relevant to its determination. Plaintiff has not demonstrated clear legal error. *Pennington*, 329 Mich App at 570.

Further, plaintiff has not demonstrated that the trial court's determination was against the great weight of the evidence. The record reflects that BAA's relationship with defendant had deteriorated between December 2022 and August 2023 hearing, but this alone does not negate the fact that BAA relied on both parents for guidance, discipline, and the necessities of life. See *Bofysil v Bofysil*, 332 Mich App 232, 243; 956 NW2d 544 (2020) ("Although [the child] might have looked to her parents to fulfill different needs and likely understood at some level their distinct household roles, both provided her with 'security, stability, and permanence.' "). Indeed, the evidence clearly established that, despite the recent strain in BAA's relationship with defendant, both parties still provided for BAA and were involved in her life. Both parties testified that they regularly communicated with BAA and provided BAA with material support. While plaintiff was more involved in BAA's life at the time of the August 2023 hearing, her current involvement was due to the fact that BAA was actively residing with her (in defiance of the existing custody order). And the record shows that defendant still actively participated in BAA's life—as much as he reasonably could while living several hundred miles away—and demonstrated the same level of involvement as plaintiff when BAA resided with him. Therefore, plaintiff has failed to demonstrate that the trial court's finding that an established custodial environment existed with both parents was against the great weight of the evidence. *Pennington*, 329 Mich App at 570.

## IV. BEST-INTEREST DETERMINATION

Plaintiff argues that several of the trial court's best-interest findings were against the great weight of the evidence, premised on clear legal error, or both, and did not support its ultimate conclusion that a change in custody was warranted.[2] We disagree.

MCL 722.27(1)(c) provides that a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." "If a child has an established custodial environment with both parents, neither parent's custody may be disrupted absent clear and convincing evidence that the change is in the child's best interests." *Bofysil*, 332 Mich App at 243. "To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23, applying the appropriate standard of proof." *Kuebler*, ___ Mich App at ___; slip op at 17. Plaintiff does not challenge the trial court's findings regarding best-interest factors (a) (love, affection, and other emotional ties), which the court found favored plaintiff; (e) (permanence of existing or proposed custodial home or homes), which the court found favored the parties equally; (g) (mental and physical health), which the court found favored the parties equally; (i) (child's reasonable preference), which the court gave "the weight it deserves" given BAA's age, BAA's maturity, and its belief that the parties influenced BAA before both of her interviews; (k) (domestic violence), which the court found favored the parties equally; or (*l*) (any other factor relevant to the particular dispute), which the court found favored defendant. See MCL 722.23(a)(e), (g), (i), (k), (*l*). Plaintiff argues that the trial court's findings under factors (b) (capacity and disposition to give child love, affection, and guidance), (c) (capacity and disposition to provide food, clothing, medical or remedial care, and other material needs), (d) (length of time in a stable, satisfactory environment), (f) (moral fitness), (h) (home, school, and community record), and (j) (willingness and ability to facilitate and encourage relationship between child and other parent) were against the great weight of the evidence, and that its findings under factors (b), (d), and (f) were also premised on clear legal error. See MCL 722.23(b)-(d), (f), (j). We will address each challenged factor in turn.

---

[2] Plaintiff also argues that the trial court's findings under two of the three parenting-time factors set forth in MCL 722.27a(7) were against the great weight of the evidence. However, because the proposed modifications to parenting time would alter the established custodial environment, "the proposal is essentially a change in custody, and *Vodvarka* [*v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003)] governs." *Lieberman v Orr*, 319 Mich App 68, 84; 900 NW2d 130 (2017). While the trial court was required to consider the best-interest factors pursuant to MCL 722.23, a trial court *may* consider the factors set forth in MCL 722.27a(7) when "determining the frequency, duration, and type of parenting time," MCL 722.27a(7); see *Shade v Wright*, 291 Mich App 17, 31-32; 805 NW2d 1 (2010). The term "may" is permissive. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). The trial court made appropriate findings when addressing the best-interest factors, and because the trial court relied on the same testimony and findings when considering the parenting-time factors, we need not expressly address the court's findings under the parenting-time factors.

Factor (b) addresses "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court found that this factor heavily favored defendant. The court noted that both parties employed appropriate disciplinary measures when necessary and had appropriately addressed faith with BAA. Additionally, the trial court noted that BAA had entered counseling at plaintiff's behest, and, as a woman, plaintiff was better able to guide BAA through certain issues related to puberty. However, the trial court stated that it had "serious concerns regarding the plaintiff's disposition and capacity to raise her daughter." The court found that plaintiff believed that it was BAA's choice "whether she abided by the Court's orders" and had made no effort to encourage BAA to return to defendant's home as required by the order, and it was "absolutely convinced that if [plaintiff] was motivated to have [BAA] go to her father's, the child would go." The trial court focused on the failed July 2023 exchange, stating that its concerns stemmed from plaintiff's decision to "set up surveillance cameras in anticipation of the exchange"; the presence of BAA's cousin, who was supportive of BAA's resistance, at the exchange; plaintiff's attempts to film rather than facilitate the exchange; and plaintiff's efforts to use the recording of the exchange to show that defendant was an abusive parent when the video and other witness testimony clearly indicated the contrary. Plaintiff argues that it was clear legal error for the trial court to consider her behavior during the July 2023 exchange rather than on the parent-child relationship or BAA's best interests, and, had it done so, it would have found that factor (b) favored her. But a party's capacity and disposition to give the child *guidance* is encompassed by factor (b), MCL 722.23(b), and the trial court was absolutely permitted to consider whether plaintiff's ability to give guidance to BAA regarding how to act regarding parenting-time exchanges was negatively impacted by her misconduct.

We do not find that "the evidence clearly preponderates in the opposite direction" of the court's conclusion. *Pennington*, 329 Mich App at 570. At the August 2023 hearing, plaintiff acknowledged that BAA was residing with her in violation of the court order, and she repeatedly stated that she believed that it was BAA's "choice" whether she returned to defendant's custody. Multiple witnesses, plaintiff included, testified that plaintiff allowed BAA's cousin—who actively encouraged and supported BAA's resistance to leaving with defendant—to be present at the July 2023 exchange. BAA's cousin testified that she knew before the July 2023 exchange that BAA was going to resist leaving with defendant, and that she had spoken to plaintiff prior to the exchange and it seemed to her that plaintiff was "supporting [BAA's] decision not to go to Arizona." The two deputies who were present during the exchange at plaintiff's request testified that plaintiff made no effort to encourage BAA to leave with defendant or facilitate the exchange in any way and, instead, attempted to silently record the entire exchange with her cell phone. Plaintiff claimed that she had encouraged BAA to go to Arizona with defendant during the July 2023 by packing BAA's suitcases for her, but a deputy testified that he never saw any packed luggage inside or outside of plaintiff's home. Plaintiff testified that she did not discipline BAA after the July 2023 exchange because she believed that BAA was "already getting punished enough," and, while plaintiff stated that she "punished" BAA after the failed June 2023 exchange, plaintiff still permitted BAA to engage in summer activities immediately thereafter because she wanted BAA to "enjoy her summer." Plaintiff also admitted that she did not adhere to the court-ordered weekly phone communication schedule, and, instead, told BAA to contact defendant whenever she felt like doing so, and defendant testified that his phone communication with BAA became more and more difficult in 2023 the longer that BAA was in plaintiff's custody. Given the evidence presented, the trial court's finding that plaintiff's misconduct reflected negatively on

-6-

her capacity and disposition to provide guidance to BAA was not against the great weight of the evidence. *Id.*

Factor (c) concerns the parties' relative abilities to provide the children with food, clothing, medical care, and other necessities, and the trial court found that this factor favored the parties equally. See MCL 722.23(c). Plaintiff notes that defendant made significantly more money than she did, but argues that she took on a larger share of the burden of supporting BAA by paying for her counseling sessions and providing her with spending money. However, the focus of the analysis under this factor is the extent to which each party has resources to meet the child's needs. See *Berger*, 277 Mich App at 711-712. In making its findings, the court acknowledged that defendant made substantially more money than plaintiff, but found that both parties were nonetheless "fully capable of providing and do provide for the needs of their daughter." The record supports this finding. Defendant testified that he worked full-time and made approximately $96,000 each year, and plaintiff testified that she worked as a hairstylist making $10,320 each year and that she helped clean up after storms in the southern states for a few months in the winter as an additional source of income. Plaintiff's boyfriend, with whom she lived, testified that he worked full-time as a "[u]nion pipeliner" and that he and plaintiff pooled their income to support the household, including BAA. Defendant testified that BAA was covered by his health insurance policy and dental plan. Defendant took BAA to dental appointments twice per year, plaintiff regularly took BAA to counseling sessions, and both parties took BAA to receive medical care when needed. Further, the record does not support plaintiff's contention that she alone provided BAA with spending money. Both parties purchased clothes for BAA, and plaintiff frequently added money to BAA's debit card while she resided in Arizona so that she had additional spending money on top of what defendant was already giving her. And while defendant was initially against BAA participating in counseling, defendant testified that he allowed BAA to participate in counseling sessions with her counselor in Michigan while she resided in Arizona, had obtained a counselor in Arizona for BAA, and would have taken BAA to counseling in Arizona had she expressed that she had an interest in doing so. Because the record clearly indicates that both parties could—and did—provide for BAA's needs, the trial court's finding was not against the great weight of the evidence. *Pennington*, 329 Mich App at 570.

Factor (d) addresses "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), and it is "properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments," *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). The court recognized that BAA had stability with both parties in the sense that she had been residing with them equally for a number of years, that both parties had resided in their respective homes for several years, that neither party had any intention of moving, and that both parties could obtain adequate housing if a move was required. The court concluded that factor (d) weighed in favor of defendant because it was concerned that plaintiff was raising BAA in an environment in which BAA was led to believe that "it is appropriate to defy court orders even when confronted with local law enforcement attempting to have those orders effectuated." Again, plaintiff seemingly only takes issue with the trial court's finding regarding her misconduct and argues that the court committed clear legal error by considering plaintiff's alienating behaviors and violation of court orders when weighing this factor. However, "[t]he plain language of MCL 722.23(d) includes the desirability of maintaining the existing environment within its scope," and a trial court is permitted to consider whether a party had created "an

acceptable environment" for the child to continue to live in that environment. *Brown v Brown*, 332 Mich App 1, 20-21; 955 NW2d 515 (2020). The trial court did not commit clear legal error by considering plaintiff's actions that might have resulted in a change in BAA's living environment by leading to modification of the custody order or even plaintiff's arrest and incarceration for contempt.

Additionally, the trial court's findings under factor (d) were not against the great weight of the evidence. As stated, plaintiff admitted that BAA was residing with her at the time of the August 2023 hearing in violation of a court order but that she nonetheless believed that BAA could choose not to return to defendant's custody, and plaintiff did not discipline BAA either time that she refused to return to defendant's custody. Both deputies present at the July 2023 exchange testified that they informed BAA before defendant arrived that she was required by a court order to return to defendant's custody and that plaintiff could potentially go to jail if she did not follow the court order. Despite this, BAA refused to leave with defendant, and she physically resisted when defendant attempted to guide her to his car. BAA escalated her physical resistance the closer she got to defendant's car until the deputies told defendant to stop what he was doing and allowed BAA to return to plaintiff's home. One of the deputies testified that, despite her resistance, BAA appeared quite calm throughout the ordeal, and, even after reiterating several times that BAA was required by a court order to leave with defendant, BAA still refused to leave. BAA's cousin testified that BAA told her prior to the July 2023 exchange that she planned on resisting, defendant testified that BAA told him that her suitcases were not packed at the time of the exchange, and the deputy never saw any packed suitcases when he spoke to BAA inside of plaintiff's home, all of which indicate that plaintiff did nothing to facilitate BAA's return to defendant's custody. Given the testimony, the court's finding that factor (d) favored defendant was not against the great weight of the evidence. *Pennington*, 329 Mich App at 570.

Factor (f) addresses "[t]he moral fitness of the parties involved." MCL 722.23(f). Plaintiff argues that the trial court's finding regarding this factor was both premised on clear legal error and against the great weight of the evidence. Relying on the same testimony that it had discussed in connection with factors (b) and (d), the trial court found that factor (f) favored defendant because plaintiff was "fostering an environment for [BAA] where it is apparently okay to defy court orders." The court did not commit clear legal error by considering the testimony previously discussed in connection with factors (b) and (d) when weighing factor (f). "A parent's questionable conduct is relevant to this factor only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Brown*, 332 Mich App at 22 (quotation marks, citation, and alteration omitted). The trial court did not simply consider plaintiff's conduct throughout this whole ordeal; rather, the court considered how plaintiff's illegal conduct— willfully and continually violating court orders—and other alienating behaviors had influenced BAA's relationships, behaviors, and understanding of the world. As previously discussed, plaintiff's misconduct clearly had a significant impact on BAA's behaviors and relationships with her parents given the significant change in BAA's behavior and attitude, and both plaintiff's conduct and repeated affirmations that BAA could choose whether she abided by court orders were highly indicative of how plaintiff would continue to function as a parent going forward. See *id*. Accordingly, it cannot be said that "the evidence clearly preponderates in the opposite direction" of the court's conclusion with regard to factor (f). See *Pennington*, 329 Mich App at 570.

Factor (h) addresses "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court found that factor (h) heavily favored defendant because BAA attended school in a highly-rated school district in Arizona, showed significant improvement in her grades in Arizona after defendant hired tutors to address her specific educational needs, was "well socialized," and engaged in several extracurricular activities offered in the community. The trial court also found that this factor favored defendant because, while BAA's grades were acceptable at her school in Michigan and she was engaged in extracurriculars there, she still struggled academically, and plaintiff had difficulty accessing services to assist BAA with her specific academic needs. The trial court was most concerned with testimony that BAA had been persistently and severely bullied at school in Michigan. The evidence supports the trial court's findings.

Plaintiff testified that BAA participated in cheerleading, softball, volleyball, and a church study group and performed various chores around the neighborhood, while defendant testified that BAA was cut from the school volleyball team but played volleyball, as well as basketball, and swam at the YMCA near his home. Several witnesses also testified that BAA had a good group of friends in both Michigan and Arizona and socialized regularly with them. Regarding BAA's education, defendant presented evidence that BAA attended a top-rated school in Arizona and had access to academic assistance and extracurricular activities. Defendant testified that BAA had struggled academically, but, after going to school early, staying after school late, and participating in tutoring sessions that he had arranged, BAA's grades significantly improved. BAA particularly struggled in math, so defendant hired tutors to assist her in math several days a week, and her math grades improved from 58% or 59% to "an A or a B." Conversely, plaintiff presented no evidence of the quality of education provided by BAA's school in Michigan, and she admitted that, while BAA attended generalized study sessions four days per week that were offered by the school, BAA still struggled with her schoolwork when she attempted to complete it on her own and needed more academic support than the school could provide her. Plaintiff testified that she assisted BAA with her homework, had bartered haircuts for tutoring from "at least five different teenagers," and enlisted BAA's uncles to further assist BAA, but that BAA still struggled in all of her core subjects and showed no real improvement in her grades.

Regarding the bullying, plaintiff testified at the November 2022 hearing that BAA ordinarily participated in basketball every year, but that she opted not to do so that year because several girls on the team were bullying her. The testimony of plaintiff and plaintiff's boyfriend at the August 2023 hearing indicated that the bullying had not only persisted but had escalated in severity. Plaintiff testified that the issue was not resolved, despite meeting with the school principal, superintendent, and counselor "every other day . . . for a couple weeks." BAA was involved an altercation with another girl in gym class, during which the other girl grabbed BAA by her hair, threw her to the ground, and punched her in the head repeatedly. As a result, BAA had to be taken to the emergency room and receive a CT scan, which revealed that she had sustained a concussion. Defendant testified that he did not learn of any of this until he received a bill in the mail for BAA's trip to the emergency room, and a Friend of the Court employee testified that plaintiff never disclosed the issues to her prior to the August 2023 hearing. In light of this testimony, the trial court's determination was not against the great weight of the evidence. See *Pennington*, 329 Mich App at 570.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The statute instructs trial courts that they "may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." *Id*. The court found that factor (j) favored defendant because, while defendant partially contributed to the poor communication between the parties, plaintiff never disclosed the severe bullying incident in Michigan. The trial court was also concerned by plaintiff's "continuing attempts to paint [defendant] as an abusive parent," emphasizing that "nothing has been substantiated to demonstrate that actionable neglect or abuse has been perpetrated" by defendant against BAA, and that the video of the July 2023 exchange admitted as evidence clearly indicated "that the abuse allegations [were] nothing more than a baseless effort by [plaintiff] to wrestle custody away" from defendant.

The trial court was also concerned that, based on plaintiff's own testimony, plaintiff was attempting to replace defendant with her boyfriend and his family. The trial court's findings are clearly supported by the record. Plaintiff testified that BAA sometimes referred to plaintiff's boyfriend as "dad" and that she believed that her boyfriend acted more as a father figure to BAA than defendant, and, when testifying about her boyfriend's parents, she referred to them as BAA's "grandma and grandpa." Plaintiff testified that defendant was generally nonresponsive to her when she attempted to speak to him about things such as parenting times and exchanges, but she also admitted that she was regularly nonresponsive or angry and aggressive in her responses when defendant attempted to communicate with her. She also admitted that she had hung up the phone while BAA attempted to talk to defendant during his designated phone time. Plaintiff admitted that she did not convey any medical concerns regarding BAA to defendant since at least December 2022, including the incident that resulted in her being concussed. However, she argued that defendant had failed to communicate with her regarding a sprained toe that BAA had received at a trampoline park. The two situations are not equivalent. Defendant testified that he did not immediately inform plaintiff of the injury because he did not believe that a sprained toe was a "major medical event" that warranted immediate notification, and both parties testified that defendant informed plaintiff of the injury after a physician had examined it and before BAA was returned to plaintiff's custody. Additionally, as previously discussed, plaintiff repeatedly stated that she believed that it was BAA's "choice" as to whether she would return to defendant's custody, and she made considerable effort to paint defendant as abusive toward BAA to justify BAA's behavior and plaintiff's own failure to encourage BAA to return to defendant's custody. Accordingly, when considering the entire record, the trial court's findings on this factor were not against the great weight of the evidence. See *Pennington*, 329 Mich App at 570.

In sum, the trial court's findings under factors (b), (c), (d), (f), (h), and (j) were not against the great weight of the evidence, and its findings under factors (b), (d), and (f) were not premised on clear legal error. The trial court therefore did not abuse its discretion by awarding primary physical custody of BAA to defendant.

## V. LEGAL CUSTODY

To the extent that plaintiff also challenges the trial court's temporary award of sole legal custody, we note that the trial court properly concluded that a temporary award of sole legal

custody to defendant was in BAA's best interests. When considering joint legal custody, in addition to the best-interest factors already discussed, the trial court must consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b). This Court has held, in a case in which there was "a deep-seated animosity between the parties and an irreconcilable divergence in their opinions about how to foster [the] child's well-being," a trial court did not err by determining that "joint custody was not an option . . . ." *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008). The record in this case has made it abundantly clear that the parties could not agree on even minor issues related to joint legal custody. While there was evidence that the parties had difficulty communicating and agreeing at the time of the November 2022 hearing, the evidence also shows that their ability to cooperate, communicate, and generally agree with each other had rapidly deteriorated to a complete inability "to cooperate and generally agree concerning important decisions affecting" BAA's well-being by the time of the August 18, 2023 hearing. See MCL 722.26a(1)(b). Consequently, the court's decision to award temporary, sole legal custody to defendant was proper. See *Wright*, 279 Mich App at 299.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra